KENNY et al. v. UNITED STATES et al.

Civ. No. 1153–51.

United States District Court
D. New Jersey.

March 26, 1952.

Harold Krieger, Jersey City, N. J., for plaintiffs.

C. H. Johns, Washington, D. C., for Interstate Comm. Commission.

William A. Roberts, Washington, D. C., for Hudson & Manhattan R. R.

William J. Hickey, Special Asst. to Atty. Gen., Roger Yancey, Asst. U. S. Atty., Newark, N. J., for the United States.

Before HASTIE, Circuit Judge, and SMITH and HARTSHORNE, District Judges.

SMITH, District Judge.

This is a civil action under Sections 2321 to 2325, inclusive, of Title 28 U.S.C., 28 U.S.C.A. §§ 2321 to 2325. The jurisdiction of the Court is based upon the provisions of Section 1336 of Title 28 U.S.C., 28 U.S. C.A. § 1336. The plaintiffs seek: first, to set aside and annul an order heretofore entered by the Interstate Commerce Commission; and second, to enjoin the operation of a tariff filed by the Hudson & Manhattan Railroad Co., and the collection of fares thereunder. The action is before the

Court on the record made at the hearing before the Commission.

The defendants challenge the right of the plaintiffs to maintain this action. It appears from the record that several, if not all, of the plaintiffs have a real interest in the controversy and have a right to maintain the action; the others have a right to intervene therein. 28 U.S.C.A. § 2323. We, therefore, believe it unnecessary to discuss the question. It is our opinion that the case can, and should, be decided on the merits.

The Hudson & Manhattan Railroad Co., hereinafter identified as the Railroad, is engaged exclusively in the transportation of passengers; it handles no package, freight or express matter, except certain mail. It operates a rapid transit system between terminals in the cities of New York, N. Y., and Jersey City and Hoboken, N. J., and maintains stations at intermediate points between these terminals. The service which it renders may be described as a "local interstate service." [1] The lines and basic services of the Railroad are fully described in the Report of the Commission.

Pursuant to the provisions of the "Interstate Commerce Acts" 49 U.S.C.A. § 1 et seq., and the regulations promulgated thereunder, the Railroad filed with the Commission a passenger tariff establishing a fare of twenty cents, an increase of five cents, for interstate transportation between points in the cities of New York, N. Y., and Jersey City and Hoboken, N. J. The tariff was published and filed on April 11, 1951, and by its terms was to become effective on May 13, 1951; this procedure was in compliance with Section 6(3) of the said Act. Thereafter the City of Jersey City and twelve other municipalities filed a formal protest.

Pursuant to the authority vested in it by Section 15(7) of the Act, 49 U.S.C.A. § 15(7), the Commission suspended the operation of the tariff for a period of seven months, the maximum permitted by statute, and initiated an investigation "concerning the lawfulness" of the fares established therein. (Suspension Orders entered on May 11 and May 25, 1951). Thereafter the proceeding was assigned for hearing before a designated examiner. The hearings, conducted on June 26, 27, 28 and July 16, 17, 18 and 19, were finally concluded on July 20, 1951. The proceeding was assigned for oral argument and was heard by the Commission on October 31, 1951 on the record made before the examiner. The decision of the Commission was reported and filed on December 3, 1951, and on that date it entered an order vacating the suspension and discontinuing the proceeding. The present action followed.

The principal grounds urged by the plaintiffs in support of this action are stated in Point One and Point Two of their brief. It is charged in the former that "the Commission has failed so manifestly in the exercise of its powers and responsibilities as to present a case of arbitrariness and statutory ultra vires." It is charged in the latter that the Commission's order "is arbitrary and ultra vires because it rests upon a total misconception by the Commission of the regulatory tasks which faced it in this case."

A careful study of the arguments advanced under Point One discloses that the principal complaint is that the Commission "made a determination of justness and reasonableness without proper findings, and on the basis of findings which are inadequate both on the face of its report and as tested by the record." The contention appears to be that the Commission failed to make the basic findings essential under the law to support its order and that its approval of the tariff was therefore arbitrary and not in accordance with the law. This contention is without merit.

We concede that the law imposes upon the Commission a duty to find and adequately state the basic facts upon which it has proceeded. United States v. Chicago, M., St. P. & P. R. Co., 294 U.S. 499, 504–506, 55 S.Ct. 462, 79 L.Ed. 1023; United States v. Baltimore & O. R. Co., 293 U.S. 454, 463, 55 S.Ct. 268, 79 L.Ed. 587; Florida v. United States, 282 U.S. 194, 215, 51 S.Ct. 119, 75 L.Ed. 291. An adequate state-

---

1. It also renders a local intrastate service between intermediate stations.

ment of fact is essential to the proper and intelligent review by the court of a proceeding conducted by the Commission; the sufficiency of such a statement, however, should be measured by the limits of the statutory power invoked, here the jurisdiction "to prescribe just and reasonable" rates and fares. Ibid. This jurisdiction is defined in Sections 15 and 15a of the Act, 49 U.S.C.A. §§ 15 and 15a, particularly subdivisions (1) and (7) of the former and subdivision (2) of the latter.

The statutory standards which the Commission must apply in the exercise of its jurisdiction are defined by Section 15a(2), supra, as follows: "In the exercise of its power to prescribe just and reasonable rates the Commission shall give due consideration, among other factors, to the effect of rates on the movement of traffic by the carrier or carriers for which the rates are prescribed; to the need, in the public interest, of adequate and efficient railway transportation service at the lowest cost consistent with the furnishing of such service; and to the need of revenues sufficient to enable the carriers, under honest, economical, and efficient management to provide such service." A proposed tariff may be approved as lawful only if it is determined to be "just and reasonable" in the light of these factors. It should be noted, however, that the statute does not exclude the consideration of "other factors."

 The statute reserves to the carrier a primary right to establish tariffs but vests in the Commission the authority to determine their "lawfulness." United States v. Chicago, M., St. P. & P. R. Co., supra, 294 U.S. 506 and 510, 55 S.Ct. 462; Skinner & Eddy Corp. v. United States, 249 U.S. 557, 564, 565, 39 S.Ct. 375, 63 L.Ed. 772; Interstate Commerce Commission v. Louisville & Nashville R. Co., 227 U.S. 88, 92, 33 S.Ct. 185, 57 L.Ed. 431. This power is specifically defined by Section 15(7), supra. The burden is upon the carrier to prove not only that the proposed tariffs are "just and reasonable" but also that they are lawful. Ibid. The proposed tariffs may be approved as "just, reasonable and not unlawful" only if they meet the statutory requirements. A

tariff initiated by the carrier pursuant to the provisions of the Act "must be upheld as lawful unless adequate reasons are presented for setting it aside." United States v. Chicago, M., St. P. & P. R. Co., supra, 294 U.S. 510, 55 S.Ct. 467.

The report of the Commission must be examined in the light of these established principles and its sufficiency must be tested by the statutory criteria. United States v. Chicago, M., St. P. & P. R. Co., supra. It is our opinion that the report, when thus examined and tested, is adequate. It contains a comprehensive recital of the ultimate facts upon which the Commission proceeded and an adequate statement of the reasons which prompted its action.

The Commission found and concluded that the "evidence as a whole indicates (1) that respondent is in need of an immediate substantial increase in revenue, which can be obtained only through substantially higher fares; (2) that the proposed fares do not exceed maximum reasonable fares; (3) that respondent's facilities are efficiently and economically operated, and their continued operation is necessary to the large majority of protestants; (4) that numerous improvements and economies have been and are being made by respondent in its operations; (5) that the principal expenses which the proposed fares are to offset are those resulting from the increased costs of labor, materials, and supplies which have occurred since 1948; that the evidence upon which the present fares were authorized was based upon financial and operating conditions for that year; and (6) that under the proposed fares respondent's revenues will be substantially increased." The Commission further found and concluded "(1) that respondent's aggregate operating revenues are less than its reasonable expenses, and (2) that the proposed local interstate fares are just and reasonable and not otherwise unlawful."

These ultimate findings and conclusions are supported by the additional, subsidiary findings of fact stated in the report. The subsidiary findings of fact are germane to the ultimate facts found by the commission. They cover: (1) the value of the carrier's

properties; (2) the earning record and financial condition of the carrier; (3) the efficiency of management and operation; (4) the nature and extent of the service rendered and the need therefor; (5) the approximate cost per passenger for the service rendered; (6) the schedule of operations and the nature and extent of the traffic; (7) the increase in passenger accommodations and the consequent increase in car mileage; (8) the income, past and expected, from railway operations; (9) the income from sources other than railway operations; (10) the improvement program undertaken by the carrier and the necessity therefor; (11) the increase in the basic rates of wages and the effect thereof on the cost of operations; (12) the increase in the cost of materials and the effect thereof on the cost of operations; (13) the diversion of passenger traffic experienced by the carrier in past years and occasioned by the growth and availability of other means of transportation, to wit, other carriers and private automobiles; (14) the prospective loss of traffic reasonably ascribable to public resistance to the proposed increase; (15) the increase in revenue which may be expected from the proposed fare increase notwithstanding such public resistance; and (16) the need of the carrier for further revenue if it is to maintain an efficient railway operation.

■ It is our opinion, after a careful examination and study of the entire record, including the exhibits, that there was ample evidence to support the findings of fact stated by the Commission in its report. The arguments of the plaintiffs, as we understand them, necessarily invite "the court to substitute its judgment for that of the Commission upon matters of fact within the Commission's province. This is not the function of the court." Interstate Commerce Comm. v. Atchison, T. & S. F. R. Co. (Los Angeles Switching Case), 234 U.S. 294, 314, 34 S.Ct. 814, 820, 58 L. Ed. 1319. It is settled that an order of the Commission, adequately supported by findings of fact, is conclusive unless it appears that (1) it is unjust and unreasonable in its consequences; (2) it is based upon a mistake of law; (3) it is not supported by substantial evidence; or (4) the Commission acted arbitrarily and exceeded its statutory powers. Interstate Commerce Commission v. City of Jersey City, 322 U.S. 503, 512, 513, 64 S.Ct. 1129, 88 L.Ed. 1420; Virginian Railway Co. v. United States, 272 U.S. 658, 663, 665, 666, 47 S.Ct. 222, 71 L.Ed. 463; Western Paper Makers' Chemical Co. v. United States, 271 U.S. 268, 271, 46 S.Ct. 500, 70 L.Ed. 941; Skinner & Eddy Corp. v. United States, supra, 249 U.S. 562, 39 S.Ct. 375. See also The Administrative Procedure Act, 5 U.S.C.A. § 1009(e); Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 487, et seq., 71 S.Ct. 456, 95 L.Ed. 456. The report of the Commission and the order entered thereon appear to be free of any such defects.

■ The general principle by which this Court must be guided was succinctly stated by the Supreme Court in the case of Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260. It is therein stated, 292 U.S. at pages 286 and 287, 54 S.Ct. at page 694: "The structure of a rate schedule calls in peculiar measure for the use of that enlightened judgment which the commission by training and experience is qualified to form. (Citation omitted.) It is not the province of a court to absorb this function to itself. (Citations omitted.) The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body."

The statement made by the Supreme Court in earlier litigation, Interstate Commerce Commission v. City of Jersey City, supra, seems apposite in the present case. It is therein stated, 322 U.S. at pages 522 and 523, 64 S.Ct. at page 1138: "The Interstate Commerce Commission has responsibility for maintaining an adequate system of wartime transportation. It is without power to protect these essential transportation agencies from rising labor and material costs. It can decide only how such unavoidable costs shall be met. They can in whole or in part be charged to increased fares, or they can be allowed to result in defaults and receiverships and reorganiza-

tions, or they may be offset by inadequate service or delayed maintenance. All of these considerations must be weighed by the Commission with wartime transportation needs as well as avoiding inflationary tendencies as a public responsibility. The need for informed, expert and unbiased judgment is apparent. The problem is intricate, the carrier is one of peculiar characteristics, its wartime traffic is of varying density, with peaks and rush hours, the rates and carrying capacities of competitors by bus and ferry are involved in any estimate of traffic diversions or probable effects of rates. What rates are required to meet actual and proper operating expenses, what revenue must be available to avoid defaults and sustain credit, what divisions should be made on interchanged traffic are as complex problems in rate-making as can readily be imagined. The delicacy of the Commission's task in wartime is no reason for allowing greater scope to judicial review than we are willing to exercise in peacetime. * * * The scope of proper judicial review does not expand or contract, depending on what party invokes it. It is as narrow now as it was when appealed to by the Company. Cf. Hudson & Manhattan R. Co. v. United States, 313 U.S. 98, 61 S.Ct. 884, 85 L.Ed. 1212."

■ It is further contended that the Commission did not have before it sufficient evidence upon which to found "a rate base." This contention seems to be fully answered by the Supreme Court in the opinion filed in the earlier litigation. It is therein stated, 322 U.S. at pages 512 and 513, 64 S.Ct. at page 1134: " 'Moreover, the Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presumption of validity. And he who would upset the rate order under the Act carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences.' Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 602, 64 S.Ct. 281, 288 [88 L.Ed. 333]. The Commission considered that it had, and we find no reason to doubt that it had, the evidence

before it that was needful to the discharge of its duty to the public and to the regulated railroad. 'With that sort of evidence before them, rate experts of acknowledged ability and fairness, and each acting independently of the other, may not have reached identically the same conclusion. We do not know whether the results would have been approximately the same. For there is no possibility of solving the question as though it were a mathematical problem to which there could only be one correct answer. *Still there was in this mass of facts that out of which experts could have named a rate. The law makes the commission's finding on such facts conclusive.'* " (Emphasis by the Court.)

We turn to the charge made in Point Two, to wit, that the order "is arbitrary and ultra vires because it rests upon a total misconception by the Commission of the regulatory tasks which faced it in this case." The argument appears to be that the proper exercise of the statutory power to prescribe "just and reasonable rates" required the Commission to undertake an independent investigation under Section 19a of Title 49 U.S.C., 49 U.S.C.A. § 19a. It is interesting to note that the brief cites no authority in support of this argument. We have examined the statute and we find therein no such requirement.

We see no reason to discuss at length the many provisions of Section 19a because they would not seem to be pertinent to the issues here raised. We observe, however, that subdivision (i) provides: "All final valuations by the commission and the classification thereof shall be published and shall be *prima facie evidence of the value of the property in all proceedings under this chapter as of the date of the fixing thereof,* and in all judicial proceedings for the enforcement of this chapter, and in all judicial proceedings brought to enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission." (Emphasis by the Court.)

It is apparent from an examination of the Act, and particularly Section 15(7) thereof, that the Commission may not found a "just and reasonable rate" on the basis

of its own valuation without having afforded the carrier not only the opportunity to be heard on such valuation but also the opportunity to offer evidence to refute it. The published valuation may be considered as prima facie evidence in the proceeding but it is clearly not conclusive.

The procedure which must be followed is prescribed by Section 15(7) of the Act, supra. The pertinent provisions of this section read as follows: "Whenever there shall be filed with the commission any schedule stating a new individual * * * rate, fare, or charge, * * *, the commission shall have, and it is * * * given, authority, either upon complaint or upon its own initiative without complaint, at once, and if it so orders without answer or other formal pleading by the interested carrier or carriers, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, fare, (or) charge, * * *." The statute clearly contemplates that the interested parties, both the carrier and protestants, shall be afforded an adequate opportunity to be heard on the merits of the controversy; nothing more would seem to be required. The right to be heard must be interpreted as embracing the right to present evidence.

It cannot be seriously contended that the plaintiffs in the instant case were not accorded a full and complete hearing. The record before the Commission includes more than 900 pages of testimony and 63 exhibits, most of which contain statistical data. The protestants were granted an adequate opportunity to present their objections to the proposed tariff and to offer evidence in support thereof.

The plaintiffs further contend that the failure of the Commission "to serve a proposed report" violated the procedural requirements of Section 8(a) of the Administrative Procedure Act, 5 U.S.C.A. § 1007 (a). The pertinent provisions of this Act read as follows: "Whenever the agency makes the initial decision without having presided at the reception of the evidence, such officers (designated examiner) shall first recommend a decision except that in *rule making* * * * (1) in lieu thereof the agency may issue a tentative decision

or any of its responsible officers may recommend a decision or (2) any such procedure may be omitted in any case in which the agency finds upon the record that *due and timely execution of its functions imperatively and unavoidably so requires.*" (Emphasis by the Court.)

Section 2(c) of the said Act, 5 U.S.C.A. § 1001(c) defines "rule making" as "agency process for the formulation, amendment, or repeal of a rule." This section defines "rule" as "the whole or any part of any agency statement of general or *particular* applicability and future effect designed to implement, interpret, or prescribe law or policy * * * and includes the approval or prescription for the future of rates, * * *." (Emphasis by the Court.) Section 15a(1) of the Interstate Commerce Acts, 49 U.S.C.A. § 15a(1), defines the term "rates" as "rates, fares, and charges, and all classifications, regulations, and practices relating thereto." These statutory definitions must be read in pari materia.

We are of the opinion that the exceptions embodied in the Administrative Procedure Act, hereinabove quoted, were intended to permit the omission of a preliminary report or tentative decision where, as here, the law imposes upon the agency the duty to proceed expeditiously. Section 15(7) of the Interstate Commerce Acts, supra, provides: "the Commission shall give to the hearing and decision of such questions preference over all other questions pending before it and decide the same as speedily as possible." This section further provides that if the proceeding "has not been concluded and an order made within the period of suspension, the proposed change of rate, fare, charge, * * * shall go into effect at the end of such period". These provisions require expeditious action, especially where, as here, the proposed tariff is suspended and a hearing thereon ordered.

We are of the further opinion that the Commission properly exercised the discretionary power vested in it by the provisions of the Administrative Procedure Act hereinabove quoted. It appears upon examination of the record that the hearings before the examiner were concluded at 12:30 a. m.,

978

on July 20, 1951, and that the participants were permitted thirty days, until August 20, to file briefs. The time for filing briefs was thereafter extended until September 10, at the request of counsel for the plaintiffs. The participants were notified that the matter was listed for oral argument before the Commission on October 4, 1951. The oral argument was then twice adjourned, once on the application of counsel for the plaintiffs. The oral argument was held on October 31, and the report of the Commission was filed on December 3, 1951. It would appear from this recital of the history of the proceeding that further delay would have hampered the Commission in the discharge of its functions.

■ The record in this case was voluminous, and it would seem that the Commission had a right to make the initial decision without awaiting a tentative decision and recommendation by the examiner, provided, of course, "that due and timely execution of its functions imperatively and unavoidably" so required. The final report filed in this proceeding stated: "No proposed report was served in this proceeding for the reasons that due and timely execution of our functions imperatively and unavoidably requires that there be no such report." The present record will not support a determination by this Court that the action of the Commission was arbitrary.

■ The error, if any, was a procedural one to which no objection was interposed by counsel for the plaintiffs. The designated examiner advised counsel at the conclusion of the hearing on July 20 that no proposed report would be filed in the proceeding. The record discloses that no objection was interposed upon his being so advised. The objection is here made for the first time and, therefore, should be dismissed as without merit. Unemployment Compensation Commission v. Aragon, 329 U.S. 143, 155, 67 S.Ct. 245, 91 L.Ed. 136; United States v. Hancock Truck Lines, 324 U.S. 774, 779, 65 S.Ct. 1003, 89 L.Ed. 1357. It may be inferred that counsel for the plaintiffs, by his failure to object and his subsequent conduct, acquiesced in the procedure followed by the Commission.

We have considered the other arguments advanced by the plaintiffs but we deem it unnecessary to decide the questions they raise. The complaint will be dismissed for the reasons herein stated. The defendants will prepare and submit to the Court, on notice to the plaintiffs, a proper order for judgment.