**WATSON BROS. TRANSPORTATION CO., Inc., Plaintiff,**

v.

**UNITED STATES of America and The Interstate Commerce Commission, Defendants.**

Civ. A. 0895.

United States District Court D. Nebraska.
Feb. 12, 1960.

David Axelrod (Axelrod, Goodman & Steiner, Chicago, Ill.) and Samuel Zacharia, Omaha, Neb., for plaintiff.

Donald L. Hardison, Attorney, Department of Justice, Washington, D. C., and William C. Spire, U. S. Atty., Omaha, Neb., for Nebraska, for defendant the United States.

C. H. Johns, Jr., Associate General Counsel, Interstate Commerce Commission, Washington, D. C., for defendant Interstate Commerce Commission.

Donald L. Stern, Omaha, Neb., for intervening defendants, Little Audrey's Transp. Co., Inc., Colonial & Pacific Frigidways, Inc., Midwest Coast Transp. Inc., Lipsman-Fulkerson & Company, Inc., Ringsby Truck Lines, Inc., and Frozen Food Express Inc.

Warren H. Wagner, Washington, D. C., for intervening defendant Oscar Mayer & Company, Inc.

Thomas Marshall and Robert G. Fraser, Omaha, Neb., for intervening defendants, Transcontinental Freight Bureau Rail Carriers.

Before WOODROUGH, Circuit Judge, and DELEHANT and ROBINSON, District Judges.

ROBINSON, District Judge.

This action was instituted by Watson Bros. Transportation Co. against the United States of America and the Interstate Commerce Commission for interlocutory and permanent injunction restraining the enforcement of certain orders of the Interstate Commerce Commission. In its complaint plaintiff alleges that an order of the Interstate Commerce Commission, holding unlawful a schedule of rates filed by the plaintiff with the Commission, reducing the existing rates for the transportation of fresh meats and packinghouse products from designated points in Iowa, Kansas, Missouri and Nebraska to points in Arizona and California, was issued in violation of Section 8 of the Administrative Procedure Act, 5 U.S.C.A. § 1007, and is therefore void and its enforcement should be enjoined. The decision of the Commission is reported in proceeding entitled Meat and Packinghouse Products-Watson Bros. Transportation Co., Inc., 306 I.C.C. 563.

Jurisdiction of this Court is conferred by virtue of Title 28 U.S.C.A. §§ 1336, 1398, 2284, 2323, 2324 and 2325. The statutes involved are the Interstate Commerce Act, 49 U.S.C.A. § 316 and the Administrative Procedure Act, 5 U.S.C. A. § 1001 et seq.

The action is before the Court on the complete record made before the Commission, together with the transcript of the hearing before the Examiner and all reports and orders. Oral arguments were presented by respective counsel, written briefs were filed and the case was submitted. Briefly stated, the facts are as follows:

Watson Bros., plaintiff herein, is a common carrier by motor vehicle subject to the Interstate Commerce Act, and authorized to engage in the transportation of general commodities, to,

from and between points in various western states. By schedule of rates filed with the Interstate Commerce Commission to become effective September 20, 1958, plaintiff proposed to establish new truckload commodity rates on fresh meats and packinghouse products from 10 points in the midwest to points in Arizona and California. The rates in effect at the time of plaintiff's proposed schedule were based on a distance scale—the Cudahy scale—which was first established for certain carriers on July 7, 1958, and for plaintiff on August 4, 1958. Those rates are under investigation in Investigation and Suspension Docket No. M–11181, Meats, Packinghouse Products, Midwest to the Pacific Coast, and other proceedings consolidated therewith.

Plaintiff's proposed rates were lower than the existing rates but subject to a higher minimum weight. The establishment of said reduced rates was protested by certain competing motor and rail carriers and, as a result of such protests, the operation of plaintiff's proposed rate scale was suspended by the Commission until April 20, 1959, pursuant to Section 216(g) of the Interstate Commerce Act, 49 U.S.C.A. § 316(g).

On October 2, 1958, the Commission ordered that the reasonableness of plaintiff's rates be determined by the use of its modified procedure under the Commission's rules of practice. Under modified procedure, the Commission has promulgated rules which provide a means by which evidence and argument are submitted to it in writing instead of by oral hearing (Rule 1.44 et seq). That order also stated:

"Because of the provisions of the Interstate Commerce Act which limit the suspension period to 7 months, and the necessity for deciding the issues within that period, it is contemplated that no proposed report, or recommended order and report will be issued in these proceed-

ings, and that the initial decision will be made by the Commission or a division of the Commission."

However, on November 5th, one of the protestants requested that the order be vacated and that the matter be assigned for oral hearing. Plaintiff agreed and by letter requested that "such hearing be held in the latter half of January 1959". Plaintiff's letter contained no objection to the "no proposed report" procedure. By order of November 4, 1958, the Commission vacated that part of its order of October 2, 1958, directing modified procedure and assigned the case for oral hearing "at the time and place hereafter to be determined by the commission".[1]

On February 2, 1959, the Commission entered an order setting the matter for hearing at Omaha, Nebraska, on March 23, 1959, but by notice of February 12, the hearing was postponed to April 6, 1959, "as the result of changes in the examiner's itinerary."

By order dated March 16, 1959, the case was assigned to Examiner Hanson for hearing and initial report. This order was not served upon the parties. At the conclusion of the two-day hearing on April 7, 1959, the protestants indicated they did not desire to file briefs, but if the examiner did permit briefs to be filed they urged that the time for filing thereof be set at the earliest possible date. They requested the Commission to expedite its decision in view of the fact that plaintiff had refused to voluntarily postpone the effective date of its proposed rate scale. At the conclusion of the hearing Examiner Hanson made the following statement:

"Under Rule 8B of the Administrative Procedure Act, as I interpret it, the parties shall be afforded a reasonable opportunity to submit for consideration to the officers participating in such decision proposed findings and conclusions. How they

---

1. Convenience to the parties governs the place of hearing, 49 U.S.C.A. § 305(c) and 5 U.S.C.A. § 1004(a), and the time thereof for economic reasons is governed by the availability of an examiner to hear the case and the existence of other cases which can be assigned to him for hearing in the same general area.

could do that without filing a brief, I don't know.

"However, I call your attention to Rule 8–A of the Administrative Procedure Act wherein the initial decision by an Examiner can be eliminated by the Commission when the agency finds upon the record that due and timely execution of its functions imperatively and unavoidably so requires.

"It is my opinion that the Commission will so find in this proceeding."

By order of April 20, 1959, the order assigning the case to Examiner Hanson for report was vacated. That order was incorporated in the docket in the proceedings but was not served upon the parties.[2]

By operation of law plaintiff's proposed rate scale went into effect on April 20, 1959. 49 U.S.C.A. § 316(g).

On May 22, 1959, the Commission, Division 3, rendered its decision finding that plaintiff had failed to establish that its new rates were just and reasonable and ordered cancellation thereof by June 25, 1959. The opening paragraph of Division 3's decision reads as follows:

"Due and timely execution of our functions under section 216(g) of the Interstate Commerce Act imperatively requires the omission of a recommended report and order in this proceeding. Requested findings not discussed in this report nor reflected in our findings or conclusions have been considered and found not justified." 36 I.C.C. at 563.

The effective date of the Commission's May 22nd order was postponed as the result of a comprehensive petition for reconsideration filed by plaintiff. On August 12, 1959, that petition was denied

by the entire Commission and it was ordered that the proposed rates be cancelled on October 26, 1959.

On October 9, 1959, plaintiff filed this action seeking interlocutory and permanent relief, and on October 25, 1959, an interlocutory order was issued staying the effective date of the Commission's order of August 12, 1959, until the matter could be considered and determined by the Court.

The sole issue raised in the complaint and now before the Court is whether under the Administrative Procedure Act the orders of the Commission of May 22, 1959, and August 21, 1959, should be set aside because of the omission of a recommended or initial report by the examiner during the administrative proceedings. A preliminary issue raised in the defendants' answer is whether plaintiff may pursue this action at all since it knowingly failed to complain of the alleged error in time to permit a change in procedure.

This Court's review of the Commission's action is limited by Section 10(e) of the Administrative Procedure Act, 5 U.S.C.A. § 1009(e), to a determination of whether that action was (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional rights, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitation, or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence * * *; or (6) unwarranted by the facts to the extent that the facts are subject to trial de novo by this Court. This section has been held to mean that the exercise of the Commission's discretion will not be overturned even though the reviewing court might on the same record have arrived at a

---

2. At the hearing before this Court plaintiff contended that it was not served with a copy of this order and therefore it was not legally notified that the examiner would not make a report. However, as pointed out by the Commission, orders in connection with requesting or vacating initial decisions by examiners concern matters of internal procedure within the Commission only, and do not require action by the parties. The Commission, therefore, is not required to serve them upon the parties.

different conclusion. Canadian Pacific Railway Co. v. United States, D.C.Minn., 158 F.Supp. 248, 252. Cf., Federal Security Adm'r v. Quaker Oats Co., 318 U.S. 218, 228, 63 S.Ct. 589, 87 L.Ed. 724.

The first ground upon which plaintiff bases its action is that the Administrative Procedure Act does not permit the omission of an examiner's report under the facts of this case, and that in any event the Commission's findings of justification for the omission was not made "upon the record". It is alleged that the finding was made in the report after the record was closed.

The pertinent provisions of Section 8 (a) of the Administrative Procedure Act, 5 U.S.C.A. § 1007, read as follows:

"*   *   * Whenever the agency makes the initial decision without having presided at the reception of the evidence, such officers (designated Examiners) shall first recommend a decision except that in rule making *   *   * (1) in lieu thereof the agency may issue a tentative decision or any of its responsible officers may recommend a decision or (2) any such procedure may be omitted in any case in which the agency finds upon the record that due and timely execution of its functions imperatively and unavoidably so requires."

Section 2(c) of the Act, 5 U.S.C.A. § 1001(c), defines "rule making" as "agency process for the formulation, amendment, or repeal of a rule". This section defines "rule" as "the whole or any part of any agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy *   *   * and includes the approval or prescription for the future of rates".

■ Section 7(d) of the Act states that the transcript of testimony and exhibits, together with all papers and requests filed in the proceedings, shall constitute the exclusive record for decision in these matters. The "record" which section 7(d) refers to is the evidentiary basis for decision. Section 8(b) specifically provides that "*   *   * All decisions *   *   * shall become part of the record *   *   *". Therefore, a finding in the Commission's decision, even though the record for the purposes of the reception of evidence is closed, would be one made "upon the record".

■ We are of the opinion that sections 8(b) and 7(d) of the Act, when read in pari materia, clearly mean that a recommendation or initial report may be omitted in any case in which the agency finds, upon consideration of all matters of record, that due and timely execution of its functions imperatively and unavoidably so requires. The exceptions in the Administrative Procedure Act were intended to permit the omission of an examiner's report where, as in the present case, the law imposes upon the Commission the duty to proceed expeditiously.

■ Section 15(7) of the Interstate Commerce Act, 49 U.S.C.A. § 15(7) provides: "the Commission shall give to the hearing and decision of such questions preference over all other questions pending before it and decide the same as speedily as possible". That section further provides that if the proceeding "has not been concluded and an order made within the period of suspension, the proposed change or rate, *   *   * shall go into effect at the end of such period". These provisions require expeditious action where the proposed rate scale has been suspended, a hearing held and the proposed rates are due to go into effect at the end of the statutory period.

■ The power to invoke section 8(a) (2) of the Act is discretionary with the Commission. Colorado Interstate Gas Co. v. Federal Power Commission, 10 Cir., 209 F.2d 717, reversed on other grounds, 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583. We are not convinced that the Commission abused that discretion here. In the proceedings before the Commission plaintiff was attempting to establish lower rates from 10 points served, and to justify those rates

by comparison with the recently established Cudahy rates which also were under investigation. The suspension order issued because the Commission had reason to believe that the proposed rates would be unlawful. Plaintiff had the burden of proving that the proposed rates were just and reasonable, 49 U.S. C.A. § 316(g), together with proving that they were compensatory.

Plaintiff's alleged purpose for reduction in rates was to successfully compete with nonregulated carriers. But the Commission found that it had made no serious effort to compete with the nonregulated carriers. The Commission further found that plaintiff's competitors had gained substantial volume of traffic since the establishment of the Cudahy rates; that it presented no adequate evidence of the compensatory nature of the proposed rates; and that its proposed reductions "obviously would result in serious disruptions in the rate adjustment of both the rail and motor carriers, and would make impossible the establishment of any semblance of stability in the rate structure while the other proceedings (Cudahy-scale) are pending". 306 I.C.C. 563, 569.

The Commission found no justification for the rates becoming effective, and since, by operation of law, the plaintiff's proposed rate scale had gone into effect at the end of the 7 month statutory period, the Commission took all legal steps necessary to maintain proper lawful rates for the good of the national transportation system as expeditiously as possible. The omission of the examiner's report shortened the time in which plaintiff's proposed rate scale would remain in effect.

In Kenny v. United States, D.C.N.J., 103 F.Supp. 971, the validity of a Commission order entered in an investigation and suspension proceeding approving an increase in rail passenger fares was raised. The procedural steps included hearing before an examiner, briefing, oral argument before the entire Commission and the issuance of a final report and order. In its report the Commission stated: "No proposed report was served in this proceeding for the reason that due and timely execution of our functions imperatively and unavoidably requires that there be no such report." (282 I. C.C. 751). It was alleged before the district court that the omission of the examiner's report violated section 8(a) of the Administrative Procedure Act. In disposing of that issue, the court stated:

"We are of the opinion that the exceptions embodied in the Administrative Procedure Act, * * * were intended to permit the omission of a preliminary report or tentative decision where, as here, the law imposes upon the agency the duty to proceed expeditiously. Section 15(7) of the Interstate Commerce Act provides: 'the Commission shall give to the hearing and decision of such questions preference over all other questions pending before it and decide the same as speedily as possible.' This section further provides that if the proceeding 'has not been concluded and an order made within the period of suspension, the proposed change of rate, fare, charge, * * * shall go into effect at the end of such period'. These provisions require expeditious action, especially where, as here, the proposed tariff is suspended and a hearing thereon ordered." 103 F.Supp. at page 977.

In the proceedings before the Commission the basic facts were definitely established. The parties had received notice; were given the opportunity to be heard and to present evidence; to know and contest the claims of the opposing parties; and to submit argument. The plaintiff was accorded all of the requirements of due process. Canadian Pacific Railway Co. v. United States, supra, 158 F.Supp. at page 256, citing Inland Empire Dist. Council, etc. v. Millis, 325 U. S. 697, 710, 65 S.Ct. 1316, 89 L.Ed. 1877; Morgan v. United States, 298 U. S. 468, 481, 56 S.Ct. 906, 80 L.Ed. 1288. The only question before the Commission for decision was what inferences and conclusions were to be drawn from the facts presented. Here the compensatory

nature of the rates, the effect of plaintiff's proposed rate scale, and the effect of new rates upon those meat packers at points where the rates did not apply involved questions of judgment upon which the Commission was as competent to pass without the examiner's intermediate report as with it, because these questions were plainly within the Commission's expert competency.

In Canadian Pacific Railway Co. v United States, supra, the plaintiff's appeal to the court was founded in part on the allegation that the omission of the examiner's report constituted a denial of due process and of the full hearing to which it was entitled. The court there stated:

"In controversies which present doubtful fact issues, the determination of which must turn upon the credibility of witnesses and the weight of evidence, we have no doubt that the parties are entitled to an examiner's report; but cases where the basic facts are definitely established, and where the agency finds that due and timely execution of its functions imperatively and unavoidably requires a prompt decision, and where the parties have been afforded full opportunity to present their evidence and their arguments, and where the only questions for decision are what inferences and conclusions shall be drawn from the facts by the agency which under the law is required to make the decision, we think the failure to have the hearing examiner make a report is not error requiring a reversal or vacation of the agency's order. See and compare, Kenny v. United States, D.C.N.J., 103 F.Supp. 971, 977–978; Alabama-Tennessee Natural Gas Co. v. Federal Power Commission, 3 Cir., 203 F.2d 494, 497–498; Colorado Interstate Gas Co. v. Federal Power Commission, 10 Cir., 209 F.2d 717, 723, reversed on other grounds 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583." (158 F.Supp. at page 257).

■ It appears from the record presented that on at least two occasions during the pendency of the administrative proceedings the parties were put on notice that an examiner's report would probably be omitted. In its order of October 2, 1958, the Commission informed the parties that, because of the provisions of the Interstate Commerce Act which limit the suspension period to seven months, and the necessity for deciding the issues within that period, it was contemplated that no proposed report, or recommended order and report would be issued in the proceedings, and that the initial decision would be made by the Commission or a Division of the Commission. At the conclusion of the oral hearing, when plaintiff would not agree to an extension of the effective date of its proposed rates, the examiner stated that, in his opinion, an examiner's report would be omitted. Plaintiff is well acquainted with Commission practice, but the record does not indicate that it raised any objection to the omission of an examiner's report until after the issuance of the Commission's report. Any objection, even though valid, must be raised as soon as possible after the facts become known, or with diligence should become known. Magnet Cove Barium Corp. v. United States, D.C., 175 F.Supp. 473, 475, affirmed 361 U.S. 32, 80 S.Ct. 122, 4 L.Ed.2d 98.

Plaintiff contends that Division 3 could not have read and digested the record and proceedings and prepared its report in only 7 working days which elapsed between the brief date and the date of its decision. It is the position of plaintiff that Division 3 was presented with a complete report, representing the views of one subordinate official, without benefit of the counter views of other interested parties, and adopted that report as its own, in violation of Section 8(b) of the Administrative Procedure Act. We find this contention to be without merit. The record shows that the hearing was concluded on April 7, 1959, and that the decision was not rendered until May 22, 1959, 45 days later. The transcript of

oral hearings in Interstate Commerce Commission matters is required to be furnished within 15 days after the close of the hearing. Division 3 therefore had 30 days in which to study the evidence and draft its report. There is no statute or rule which requires the Commission to forebear examination and analysis of the record until briefs have been filed.

The record of the proceedings was not voluminous, 36 exhibits were introduced and the hearing lasted only 2 days. The record presented will not support a determination by this Court that the Commission acted arbitrarily in omitting the examiner's report. Furthermore, it is not the function of this Court to probe the mental processes of the Commission. United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429.

It is well settled that a consideration of the evidence by the Commission is a requisite to the full hearing guaranteed by the Administrative Procedure Act. However, plaintiff's allegation here that Division 3's decision must have been prepared by someone other than a member of the Commission is wholly unsupported by fact, and even if correct, this Court could not conclude that no member of the Commission was familiar with the record upon which the decision was based.

Section 8(b) of the Administrative Procedure Act provides that prior to each decision the parties shall be afforded a reasonable opportunity to submit, for the consideration of the officers participating in such decision, proposed findings and conclusions or exceptions to the decisions or recommended decisions of subordinate officers. Rule 1.91(e) of the Interstate Commerce Commission's General Rules of Practice provides that each brief should include requests for such specific findings as the party desires the Commission to make. Section 8(b) of the Act states alternatively that parties may either submit proposed findings and conclusions or exceptions to the decisions or recommended decisions. The Commission's Rules of Practice allow parties to submit requested findings and conclusions in their briefs. Therefore the fact that plaintiff was afforded the opportunity to submit requested findings and conclusions in its brief filed on May 11, 1959, satisfies the requirements of the Act.

Section 10(e) of the Administrative Procedure Act, 5 U.S.C.A. § 1009(e), after setting forth the scope of judicial review provides:

"In making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party, and due account shall be taken of the rule of prejudicial error."

Plaintiff does not complain that it did not obtain a fair hearing or that the decision of the Commissioner on the merits was erroneous in any respect. We are not convinced that there was prejudice to the plaintiff in the omission of the examiner's report since the issue here did not relate to basic facts. Credibility of witnesses was not a vital factor and no accusatory or disciplinary issues were involved. The Commission did not need the examiner's report as an aid in reaching a decision. "The structure of a rate schedule calls in peculiar measure for the use of that enlightened judgment which the commission by training and experience is qualified to form." Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 694, 78 L.Ed. 1260.

While plaintiff sets forth various allegations of error in its complaint, it fails to allege in what fashion the result would have been different had these alleged errors not occurred. The Commission's alleged failure to observe technical requirements, or its failure to properly exercise its power is not alone sufficient to warrant a reversal of the Commission's decision. The error complained of must be found to have constituted prejudicial error before a reversal can be required.

The inquiry before the Interstate Commerce Commission here was as to the lawfulness of plaintiff's proposed rates and plaintiff was afforded the fullest opportunity to submit evidence sustaining its statutory burden of proof. Division 3, and then the full Commission made

the ultimate conclusion that plaintiff's proposed rates were not lawful. Plaintiff does not allege that that conclusion was erroneous. It does not offer anything to show how the ultimate result would be different if this Court were to require the Commission to correct the alleged procedural errors.

It is the conclusion of the Court that the elimination of the examiner's report on a finding of necessity under the Administrative Procedure Act will not suffice to upset the administrative proceeding to which plaintiff does not object on the merits. Plaintiff has alleged a technical procedural error in a proceeding in which it received a full and fair hearing plus a report setting forth the Commission's action and detailed reasons therefor. Plaintiff filed a comprehensive petition for reconsideration or further hearing and the entire Commission considered the numerous points alleged in said petition. In our opinion the omission of an examiner's report was neither arbitrary, detrimental nor prejudicial.

Judgment will be entered vacating and setting aside the temporary restraining order of October 25, 1959, and dismissing the complaint.