NORTHERN VALLEY TRANSFER,
INC., Plaintiff,

v.

INTERSTATE COMMERCE COMMIS-
SION and United States of America,
Defendants.

Civ. A. No. 329-60.

United States District Court
D. New Jersey.

March 24, 1961.

Leo N. Knoblauch, Jersey City, N. J.,
for plaintiff.

Chester A. Weidenburner, U. S. Atty.,
by Charles H. Hoens, Jr., Asst. U. S.
Atty., Newark, N. J., and Fritz R. Kahn,
Office of Atty. Gen., Washington, D. C.,
for Interstate Commerce Commission.

Arthur H. Fribourg, Dept. of Justice,
Washington, D. C., for the United States.

Before FORMAN, Circuit Judge,
WILLIAM F. SMITH, Chief Judge, and
WORTENDYKE, District Judge.

**WORTENDYKE, District Judge.**

In this action under 28 U.S.C. §§ 1336 and 1398, the court is asked to enjoin and set aside orders of the Interstate Commerce Commission, dated respectively March 16, 1959 and February 3, 1960, which denied plaintiff's petition for reconsideration of the Commission's decision of September 24, 1958 in Carlee Corporation vs. Northern Valley Transfer, Inc., Docket No. 32353. The procedure prescribed by Chapter 157 of Title 28 of the U.S.C. has been followed, and this opinion embodies the decision of the three-judge court which heard the application and which was constituted in accordance with 28 U.S.C.A. § 2284. Plaintiff asserts that the Commission's denial of the petition for reconsideration deprived plaintiff of due process of law guaranteed by the Fourteenth amendment to the United States Constitution.

Plaintiff (Northern Valley), is a New Jersey corporation, a common motor carrier of freight in interstate commerce, operating under Certificate No. MC–106209 issued by the Commission as required by 49 U.S.C.A. § 306. On January 9, 1958, Carlee Corporation (Carlee), a manufacturer of wadding and a shipper in this case, filed with the Commission a complaint charging that the rates charged by Northern Valley on and between June 19, 1956 and January 14, 1957 for shipments of wadding, were inapplicable, unjust and unreasonable and in violation of Sections 216 and 217 of the Interstate Commerce Act (Act), 49 U.S.C.A. §§ 316 and 317. Hearing upon Carlee's complaint was held before the Commission's examiner, and plaintiff appeared and participated therein.

The Examiner found and reported as follows:

(1) The shipper's operations were those of a converter.

(2) The commodities shipped consisted of cotton, carded and combed by machine, and its fibers expanded and oriented in relationship to each other to produce a fluffy web of material. This web constituted a non-woven product well within the dictionary definition of wadding. The product's strands were sprayed with acetone as a bonding agent. It was described in the shipping papers as wadding and was intended to be used as padding by the textile industry. A sample submitted to the United States Testing Company, Inc., a commercial laboratory, was found to be 100% cellulose acetate.

(3) The commodity was cellulose wadding.

(4) The shipper had no knowledge of what the classification of the commodity should be, and no application was made to the National Classification Board for a rating.

(5) The freight bills contained the names of shipper and consignee, number of pieces or rolls, width and length of the wadding, and its total yardage. The rates charged were 0.5 cent, 0.75 cent or 6.75 mills per lineal yard. No weights were shown but each roll was stamped with a code number which would reveal the weight per yard. The total weight of the shipment could be computed from the yardage.

(6) Shipper priced the wadding to its customer upon a per ounce delivered basis. This price was projected successively to a per pound and then to a per yard basis for purposes of arriving at the carrier's charges. Because of the thin margin of profit, shipper advised carrier that the shipper could not pay over a certain amount per lineal yard for transportation. Accordingly the shipping rates upon a lineal yard basis were orally agreed upon by shipper and carrier.

(7) The agreed upon shipping charges were outside the scope of the published tariff.

(8) Shipper's bills of lading were matched with carrier's freight bills by code numbers. No weight, rate or charge appeared on any freight bills, but indicated thereon was the shipper's number of the type of material and its code number. For example, in the code number 2300, the first digit signified blend of fibers or type of material, and the remain-

ing three digits signified 3 ounces per lineal yard. The number of yards ordered was multiplied by 3, giving the total number of ounces and the product of that total divided by 16 gave the number of pounds. This poundage weight was then multiplied by the amount of the first-class rate, and that product was the charge to be applied to the shipment.

(9) The density of the wadding averaged 1.34 pounds per cubic foot. The material was not plastic and therefore classification Item 77682 was not applicable to the material.

(10) The oral shipping rate agreement, based upon a charge per yard, was illegal because such charge was not on file with the Commission, as required by the Act.

(11) There being no legal basis for the oral agreement, it was found void and its terms unenforceable.

(12) Rates for the future were not prescribed because they had then been already published on cellulose wadding, n. o. i. (not otherwise indexed), between the shipping points.

(13) The Commission was without jurisdiction to adjudicate the rights and responsibilities of the parties to the shipping contracts.

To the Examiner's report Northern Valley filed exceptions on June 23, 1958. After hearing upon those exceptions, in which Northern Valley actively participated, the report of the Examiner was adopted by Division 3 of the Commission. The report of the Commission (304 I.C.C. 775, at pp. 778–779) reads, in part, as follows:

"The basic part of the article (shipped) consists of fibers. These synthetic fibers of cellulose acetate are derived from cellulose. * * * The record is clear that the material shipped is not plastic. Upon consideration of all the evidence, we conclude that the considered commodity is cellulose wadding, not machine pressed, and in packages weighing less than 15 pounds per cubic foot. The classification description contained in item 20740 embraces such shipments. We find that the * * * shipments were covered by the description in item 20740 of the classification, and that the applicable rates were and are those specified in that item. We further find that the applicable rates are not shown to have been or to be unjust, unreasonable, or otherwise unlawful. * * * Not only were the orally-agreed-upon rates based upon the mistaken premise that the commodity was a plastic, but the defendant, as a common carrier was charged with the knowledge that the agreed charges were illegal for failure to publish and file them as required by the act."

This report was filed September 24, 1958 and served upon the parties on October 7, 1958.

Applications for rehearing, reargument or reconsideration of a decision, order or requirement of the Commission or a division thereof may be made as provided by such general rules as the Commission may establish. See Section 17(6) of the Act, 49 U.S.C.A. § 17(6). Rule 101(e) of the Commission's General Rules of Practice, 49 C.F.R. § 1.101(e) adopted under the authority of the above cited section, provides that "Except for good cause shown, and upon leave granted" a petition for rehearing, reargument, or reconsideration "must be filed within 30 days after the date of service of a decision or order." This rule was not complied with. On January 5, 1959, 90 days after service of the Commission's report, Northern Valley filed with the Commission its petition for waiver of Rule 1.101, and for rehearing, reopening and reconsideration of the Commission's report. The full Commission denied the latter petition by its order of March 16, 1959 for failure "to show good cause for failure to file said petition within the 30-day period specified in Rule 1.101(e) or to show substantial and material reasons warranting the granting of said petition." Having been advised that Northern Valley no longer was participating in the movement of the related

traffic, and that it had published rates applicable to future shipments of similar wadding, the Commission, on May 20, 1959, ordered the pending proceeding discontinued. Under the Commission's rules Northern Valley had until June 27, 1959 to petition the Commission for rehearing or reconsideration of its last preceding petition, but no such action was taken within that period. However, on November 2, 1959, Northern Valley filed another petition for waiver of the Commission's rule 1.101. The latter petition was denied by the Commission's order of February 3, 1960, served on Northern Valley on February 25, 1960, upon the ground that the petition was tendered more than a year after service of the Commission's report and more than five months after service of the Commission's order of May 20, 1959, discontinuing the proceeding, and that the petition had failed to show good cause for failure to file the petition within the period specified in Rule 1.101(e) or to show substantial and material reasons warranting the granting of the petition. Northern Valley commenced the present action on March 31, 1960.

Two principal questions are presented for the decision of this Court, viz.: (1) Does the Commission's report of September 24, 1958 find support in substantial evidence? and (2) Were the actions of the Commission denying plaintiff's successive petitions for rehearing an abuse of discretion?

■ Plaintiff also complains that one of the three Commissioners, constituting Division 3 of the Commission, was absent from the proceedings because of illness and did not participate in the Commission's decision. Plaintiff contends that it was deprived of a full hearing by reason of the absence of one of the three Commissioners. We find no merit in this criticism. Section 17(3) of the Act, 49 U.S.C.A. § 17(3), which is made applicable to motor carrier proceedings by Section 205(h) of the Act, 49 U.S.C.A. § 305(h), provides that a majority of the Commission, of a division thereof, or of a board, shall constitute a quorum for

the transaction of business, and empowers the Commission to make and amend general rules or orders requisite for the order and regulation of proceedings before it or before any division thereof. The cases which plaintiff cites do not afford any support for the contention which it makes in this respect. Assuming, as plaintiff contends, that in consequence of the Commission's report of which it complains, great financial loss is threatened to or has been suffered by the plaintiff, such consequence, while regrettable, is irrelevant to the issues presented respectively to the Commission and to this Court.

Section 217(a) of the Interstate Commerce Act, 49 U.S.C.A. § 317(a), required the plaintiff, as a common carrier by motor vehicle, to publish and file with the Commission tariffs showing the rates to be charged for transportation of property in interstate commerce, subject to rejection by the Commission. And Section 217(b) of the Act, 49 U.S.C.A. § 317(b), forbids such a carrier to charge rates greater or less than those published in its filed tariffs. The rates charged by such a common carrier are required by Section 216(b) of the Act, 49 U.S.C.A. § 316(b), to be just and reasonable, and the determination of the question whether such rates conform to these criteria is delegated to the Commission by Section 216(e) of the Act, 49 U.S.C.A. § 316(e).

■ The jurisdiction of this Court to review actions of the Interstate Commerce Commission is limited to a determination of whether there was a rational basis for the action of the administrative body of which complaint is made. Kenny v. United States, D.C.N.J.1952, 103 F. Supp. 971, 975. At page 975 of Chief Judge Smith's opinion in that case, he quotes from Mississippi Valley Barge Line Co. v. United States, 1934, 292 U.S. 282, at pages 286, 287, 54 S.Ct. 692, at page 694, 78 L.Ed. 1260, as follows:

" 'The structure of a rate schedule calls in peculiar measure for the use of that enlightened judgment which the commission by training and ex-

perience is qualified to form. \* \* \* It is not the province of a court to absorb this function to itself. \* \* The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.' "

See also Interstate Commerce Commission v. Mechling, 1947, 330 U.S. 567, 67 S.Ct. 894, 91 L.Ed. 1102. In other words "Unless in some specific respect there has been prejudicial departure from requirements of the law, or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law." United States v. Pierce Auto Freight Lines, Inc., 1946, 327 U.S. 515, 536, 66 S.Ct. 687, 90 L.Ed. 821, cited and quoted from by Circuit Judge Goodrich in Community & Johnson Corp. v. United States, D.C. N.J.1957, 156 F.Supp. 440, 442.

■ It is conceded that the rates charged by Northern Valley for its shipments of wadding from Rockleigh, N. J. to New York, N. Y. from June 2, 1956 through January 16, 1957 were orally agreed upon by and between the carrier and the shipper, and that the rates charged pursuant to that agreement were not disclosed by the carrier's tariff on file with the Commission at the time the shipments were made. Such rates, so arrived at, were illegal. New York, New Haven & Hartford Railroad Co. v. Interstate Commerce Commission, 1906, 200 U.S. 361, 26 S.Ct. 272, 50 L.Ed. 515; Chicago & Alton Railroad Co. v. Kirby, 1912, 225 U.S. 155, 32 S.Ct. 648, 56 L.Ed. 1033; Atchison, Topeka & Sante Fe Railway Co. v. Robinson, 1914, 233 U.S. 173, 34 S.Ct. 556, 58 L.Ed. 901.

■ We are not persuaded that the Commission's order of September 24, 1958 lacked support in substantial evidence before the Commission. The ex-

cerpts from the testimony before the Examiner, which the plaintiff quotes in its brief, merely relate to the competency of certain witnesses and the weight of their testimony.

The language of the report of Division 3 of the Commission, 304 I.C.C. 775, brings into sharp relief the substantiality of the evidence supporting its report. The report states at p. 777: "In an attempt to show that in actual practice the charges were made in accordance with the provisions in the tariff on a weight basis instead of per yard, the defendant states that on a less-than-truckload shipment, for example, it charged the Class 200 rate, which was computed by doubling the first-class rate of $1.22. For a shipment of 1200 pounds the resulting rate of $2.44 would produce charges of $29.28, plus a 20-percent penalty of $5.86 for alleged improper packing because the ends of the rolls were open and not wrapped, or a total of $35.14. However, the charge actually made by the defendant (plaintiff here) on this particular shipment, No. 16395, was $46.35, which indicates that the rate was not computed on a weight basis as claimed." We agree with the Commission that the evidence before it disclosed a deviation from the tariff rate, which was prohibited, because it was in violation of section 217(b) of the Act. See United States v. Schupper Motor Lines, Inc., 2 Cir., 1959, 262 F.2d 859; Fawley Motor Lines v. Cavalier Poultry Corp., 4 Cir., 1956, 235 F.2d 416, 418. Even had the wadding transported been classifiable as a plastic, rated as double first class in less-than-truckload quantities, as plaintiff contends, the rates which it charged were negotiated with the shipper independently of any considerations of classification or rating. The fact is that the carrier ignored the rates specified in its tariff for Class 200 freight, by collecting the charges orally agreed upon.

■ Because there was issued, on January 15, 1959, effective March 4, 1959, ICC Permission No. M–88801 "Supplement No. 17 of the National Motor Freight Classification No. A–4", wherein

Item No. 20740 referred to in the Commission's order, supra, defined the article as cellulose wadding n. o. i., taking a Class rate of 100 less-than-truckload, 85 for truckload, 10,000 pound minimum, as a classification, was cancelled and replaced by Item No. 20740–A, defining the article as a cellulose wadding n. o. i. other than cellulose derivatives, taking a class rate of 100 for less-than-truckload, 85 for truckload, and 10,000 pound minimum, Northern Valley contends that it thereby became entitled to a rehearing because of the new classification so promulgated which constituted newly discovered evidence not available to Northern Valley at the time of the original hearing. Plaintiff therefore argues that the refusal of the Commission to grant the rehearing, despite the tardiness of Northern Valley's application therefor, deprived plaintiff of substantial rights and constituted abuse of the Commission's discretion. Moreover, says Northern Valley, the same supplement (No. 17 effective March 4, 1959) replaced Item No. 74635–A of Supplement No. 5, with a new item No. 74635–B describing the commodities referred to as "hair, wool synthetic fiber, mass (sic) or vegetable fiber, separate or combined, with or without binder, with or without fabric or sponge rubber reinforcement or covering, in packages, taking a class rate of 300, any quantity." Plaintiff characterizes the foregoing allegedly newly discovered evidence as "such that, by its very nature, will contravene the determination of Division 3 and substantiate the basic constitutional reason upon which this plaintiff seeks the right for rehearing, reopening and reconsideration of its petition." We cannot accept this contention. The wadding which was transported by Northern Valley and with which the proceedings before the Commission were concerned consisted of cellulose acetate fibers bonded together by means of chemical solvents. A sample of the material submitted to a reliable commercial testing laboratory for analysis was found to consist of 100% cellulose acetate. At the time of the proceeding before the Commission no rates were in effect expressly covering this type of wadding. The absence in the tariff of any item specifically covering the substance required a classification thereof by analogy. Rule XIV of National Motor Freight Classification A–3 M.F.–I.C.C. No. 8 expressly required that "the rating for any article not provided for, either by its specific name or embraced in an N.O.I. item, shall be the rating provided in this classification, or supplements thereto, for an article, which, in the carrier's judgment, is the most closely analogous." The same Rule further required that in the cases within its contemplation the "facts must be reported to the Chairman of the National Classification Board, through the traffic officer of the carrier, in order that the establishment of specific provisions may be considered. This rule will not apply in connection with ratings or rates published in exceptions to this classification or in the commodity tariff." As the Commission points out in its brief, Northern Valley did not contact either the National Classification Board or the Commission for a determination as to how the wadding transported should be rated, or what rate should be assessed. "A year and a half after it began handling the traffic it erroneously concluded, on its own and without any guidance from these expert bodies, that the cellulose acetate wadding should be rated by analogy to plastics." The wadding was most nearly analogous to Item No. 20740 as then described in the National Motor Freight Classification, i. e., cellulose wadding n. o. i. not machine pressed and in packages weighing less than 15 pounds per cubic foot. The evidence disclosed that the material was a continuous web formed by combing and orienting fibers in such a relationship to each other that they became self-sustaining. The product was classifiable under Item 20740 because the fibers of which it was composed were made of cellulose, and not under Item 76682 covering plastic materials or products cellular or expanded. It seems clear to us that the non-woven fabric consisted of a web of fibers chemically joined together which

could not appropriately be described as a cellular or expanded plastic material or product. There was, therefore, ample support in the evidence for the findings of the Commission.

■■ It is perfectly clear that the successive petitions of Northern Valley for rehearing or reconsideration were grossly tardy under the Commission's general rules of practice, 49 C.F.R. § 1.101(e). Failure to apply within the time allowed by the terms of the rule could only be excused for good cause shown. Northern Valley made no effort to disclose such cause, if it existed, in any of its said petitions until that of November 6, 1959, to which it annexed, as Appendix A, a letter from the National Classification Board, dated February 7, 1958, to plaintiff's attorney, which it stated had not been presented at the hearing before the Examiner. Northern Valley argued in this petition (of November 6, 1959) that it believed that the content of that letter would confirm petitioner's belief that the proper classification of cellulose acetate wadding was as a plastic article n. o. i., Item 77655 of the National Motor Freight Classification No. A–3, American Trucking Associations, Inc., Agent, M.F. I.C.C. No. 8. Accordingly, Northern Valley sought reconsideration by the Commission of the cellulose acetate wadding under the new Item 77655. However, we are referred by the defendants to a subsequent letter to Northern Valley's counsel from the Board, dated March 17, 1958, captioned "Re: Cellulose Acetate Wadding", which stated in part as follows:

"In our letter of February 7, which was in reply to your original inquiry, we stated we considered the ratings in item 77655 covering Plastic Articles, NOI to be applicable and we stated our supporting reasoning therefor. After receipt of your inquiry of March 6, we reopened the matter for further study and have found our advice of February 7 to be in conflict with previously issued advices to others concerning very similar materials. Therein we held

the rating for Dry Goods, NOI to be applicable; and this is to advise that on reconsideration of all provisions named in the Classification having any possible application to this commodity, we consider the ratings for Dry Goods, NOI to be applicable, and therefore cancel our advice of February 7."

Subsequent to the letter last referred to, the Board adopted Supplement No. 17 above referred to, which revised Item No. 20740 of its Classification No. A–4, to cover only cellulose wadding n. o. i. consisting of other than synthetic fibers. Defendants concede, therefore, that as of the present, in view of the Supplement, the traffic under consideration would no longer fall within the description of Item No. 20740, and recognize the possibility that the commodity might now be within Item 74635–B. This classification change, however, was effected almost six months after the Commission's Division 3 report of September 24, 1958. This subsequent change in classification would not, in our opinion, constitute newly discovered evidence and, consequently, would not constitute good cause for the tardiness of plaintiff's applications for rehearing.

■ Administrative rehearings are not matters of right but of pleas to discretion. The discretion to be invoked is that of the body making the order, not that of a reviewing body. Interstate Commerce Commission v. City of Jersey City, 1944, 322 U.S. 503, 64 S.Ct. 1129, 1134, 88 L.Ed. 1420. At page 514 of the opinion in that case, at page 1134 of 64 S.Ct., we are reminded that, if litigants were entitled to rehearings as a matter of law after the order of the administrative body upon the record before the examiner, because of new circumstances arising or facts discovered between the examiner's report and the commission's hearing on exceptions thereto, "there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening."

607

We find no abuse of discretion by the Commission. We are, therefore, without authority to interfere with its actions. See W. J. Dillner Transfer Co. v. United States, D.C.Pa.1951, 101 F. Supp. 506, affirmed 344 U.S. 883, 73 S.Ct. 180, 97 L.Ed. 683.

The complaint will be dismissed for the reasons hereinabove stated. An appropriate order may be presented.