MISSISSIPPI VALLEY BARGE LINE CO. *v.* UNITED STATES ET AL.

No. 807. Argued April 5, 1934.—Decided April 30, 1934.

*Mr. James R. Van Slyke,* with whom *Messrs. Guy A. Thompson* and *Truman P. Young* were on the brief, for appellant.

*Mr. J. Stanley Payne,* with whom *Solicitor General Biggs, Assistant Attorney General Stephens,* and *Messrs. Elmer B. Collins,* and *Daniel W. Knowlton* were on the brief, for the United States and Interstate Commerce Commission, appellees.

*Mr. Elmer A. Smith* for the Illinois Central R. Co., et al., interveners.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The appellant, Mississippi Valley Barge Line Company, is a common carrier by water, operating towboats and barges on the Mississippi and Ohio Rivers. It derives a large part of its earnings from the transportation

of sugar, which it carries from New Orleans to Cincinnati and St. Louis and intermediate ports. It is in active competition with rail carriers serving the same ports and inland points beyond.

In 1932, the Illinois Central Railroad Company and other carriers by rail filed with the Interstate Commerce Commission proposed schedules of reduced rates on sugar from New Orleans to northern points, the rates to become effective October 1 of that year. The aim of the reduction was to meet the competition of the appellant and other carriers by water who had been able by reason of low and unregulated rates to divert to themselves a large part of the traffic in sugar that till then had moved by rail. The railway companies perceived that they were threatened with still heavier losses in the future unless something was done by a reduction of their own charges to recover the business that was slipping from their grasp. Indeed the change had gone so far that already they were hauling practically no sugar within the field of competition. In 1932 the barge movement amounted to over 500,000 tons, about ten times as much as moved all-rail from Louisiana to the north. Of the water-borne traffic, by far the greater part was carried by the Federal Barge Line, which has acquiesced in the new schedules, preferring to let the rail carriers fix the rate level. The residue has been carried, part of it by this appellant, part by the American Barge Company, and part by tramp or contract operators. During the year 1932, one railway company, the Illinois Central, lost about half a million dollars by traffic thus diverted. The new schedules that were filed in the attempt to retrieve these losses proposed two different sets of rates, one based upon a minimum weight of 60,000 pounds per car, and the other upon a minimum weight of 80,000 pounds per car. To illustrate their effect, the old rate between New Orleans and Chicago had

been 56¢ per 100 lbs.; the new one was 30¢ per 100 lbs. for the 80,000 minimum and 39¢ per 100 lbs. for the 60,000 minimum. Between New Orleans and St. Louis the old rate of 52¢ became 28¢ and 34¢.

Protests against these changes having been filed by the appellant and others, the Interstate Commerce Commission proceeded to an investigation under § 15 (7) of the Interstate Commerce Act, and in the meantime ordered that the schedules be suspended. There were full hearings of the parties in interest, with testimony and argument. On July 3, 1933, the Commission found by its report that the respondents (the interveners in the court below) had justified the proposed rates with the 60,000 pound minimum. It found that they had not justified the proposed rates with the 80,000 pound minimum, but that they had justified rates four cents higher. " So far as the 80,000 pound minimum is concerned," the Commission said, " this means all-rail rates from New Orleans of 34 cents to Chicago and 32 cents to St. Louis." Sugar Cases of 1933, 195 I.C.C. 127. The rail carriers accepted this proposal, and an amended order of the Commission gave approval to the schedules so revised.

Under the Urgent Deficiencies Act (October 22, 1913, c. 32, 38 Stat. 208, 220; 28 U.S.C., §§ 47, 48), the Mississippi Valley Barge Line Company filed a bill to enjoin and set aside the order of the Commission, joining the United States and the Commission as defendants. A number of rail carriers who had been respondents in the proceeding were allowed to intervene. After the filing of answers, the suit was heard by a District Court of three judges in accordance with the statute. 28 U.S.C., § 47. None of the evidence received by the Commission was placed before the court. All that the court had, aside from the report and orders, was a group of affidavits by the complainant's officers, which were in substance to the

effect that the water carriers would be unable to compete with the carriers by rail if the schedules were to stand approved. These affidavits were received without objection as to their form, but subject to the objection that they were inadmissible in so far as they were inconsistent with what had been found in the report. The court dismissed the bill, holding that the findings of the report were conclusive as to the facts, and that they were sufficient on their face to uphold the lowered rates. 4 F.Supp. 745. An appeal to this court followed. Judicial Code, § 210; 28 U.S.C. § 47a.

The settled rule is that the findings of the Commission may not be assailed upon appeal in the absence of the evidence upon which they were made. *Spiller* v. *A., T. & S. F. Ry. Co.*, 253 U.S. 117, 125; *Louisiana & Pine Bluff Ry. Co.* v. *United States*, 257 U.S. 114, 116; *Nashville, C. & St. L. Ry. Co.* v. *Tennessee*, 262 U.S. 318, 324; *Edward Hines Trustees* v. *United States*, 263 U.S. 143, 148; *Chicago, I. & L. Ry. Co.* v. *United States*, 270 U.S. 287, 295. The appellant did not free itself of this restriction by submitting additional evidence in the form of affidavits by its officers. For all that we can know, the evidence received by the Commission overbore these affidavits or stripped them of significance. The findings in the report being thus accepted as true, there is left only the inquiry whether they give support to the conclusion. Quite manifestly they do. The structure of a rate schedule calls in peculiar measure for the use of that enlightened judgment which the Commission by training and experience is qualified to form. *Florida* v. *United States, ante*, p. 1. It is not the province of a court to absorb this function to itself. *I.C.C.* v. *Louisville & Nashville R. Co.*, 227 U.S. 88, 100; *Western Paper Makers' Chemical Co.* v. *United States*, 271 U.S. 268, 271; *Virginian Ry. Co.* v. *United States*, 272 U.S. 658, 663. The judicial func-

tion is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body. In this instance the care and patience with which the Commission fulfilled its appointed task are plain, even to the casual reader, upon the face of its report. The rates were not approved as the respondents had submitted them. For the 80,000 pound minimum, they were found to be too low. Not till there had been an increase of four cents per 100 pounds did the schedule win approval. There was a sedulous endeavor to guard against a rate war that would end in mere oppression.

We are told for the appellant that upon the face of the report the Commission has been heedless of the mandate of a statute. By § 500 of Transportation Act, 1920 (Feb. 28, 1920, c. 91, 41 Stat. 499; 49 U.S.C. § 142) " it is declared to be the policy of Congress to promote, encourage and develop water transportation, service, and facilities in connection with the commerce of the United States, and to foster and preserve in full vigor both rail and water transportation." Following this declaration, which is in the last title of the act, a duty is imposed upon·the Secretary of War to do certain acts with the object of developing facilities for inland waterway transportation, and in particular to investigate the subject of water terminals both for inland waterway traffic and for through traffic by water and rail; to advise and coöperate with communities, cities and towns; and to ascertain whether the inland waterways " are being utilized to´the extent of their capacity " and are meeting the demands of traffic. By earlier sections of the act, § 418; 49 U.S.C. § 15; 15 (1), 15 (4), the regulatory powers of the Commission had been broadened in respect of through or joint rates for carriers by rail and water, *Chicago, R. I. & P. Ry. Co.* v. *United States,* 274 U.S. 29, 36; and by the Inland Waterways Transportation Act as amended in 1928, these pow-

ers had a new extension. Act of May 29, 1928, c. 891, § 2, 45 Stat. 978; 49 U.S.C. § 153 (e); *United States* v. *Illinois Central R. Co.*, 291 U.S. 457.

For the determination of this case there is no need to go into the question whether the declaration of the policy of Congress to foster rail and water transportation creates a new standard of duty for the Commission in the ordering of rates, or is a source of private rights if the duty is ignored. That question does not become important until the policy of the lawmakers appears to have been flouted; and here it was obeyed. The admonition does not mean that carriers by rail shall be required to maintain a rate that is too high for fear that through the change they may cut into the profits of carriers by water. The most that it can mean, unless, conceivably, in circumstances of wanton or malicious injury, is that where carriers by land and water are brought within the range of the regulatory powers of the Commission, as e.g., in establishing through routes or joint rates, there shall be impartial recognition and promotion of the interests of all.

No discrimination of that kind is proved or even charged. The rates affected by this schedule do not involve the division of joint earnings between land and water carriers. The appellant makes its own rates from port to port, and may increase or lower them at will. What has been done by the Commission affects the carriers by rail alone, at least in its immediate consequences. Transportation by water may feel the repercussions of regulation elsewhere. It has not been regulated directly. Even for transportation by land, the Commission has done no more than establish a permissive minimum, and this a minimum sufficient to give assurance that the carriage of the sugar will not involve a loss. " There is no reasonable doubt," we are told in the report, " that the proposed rates are high enough to pay more than the cost of service."

The appellant insists that it is fighting for its life, and that the effect of the new competition will be to drive it out of business. Nothing in the findings gives substance to the fear. There is significance in the fact that the Federal Barge Line, the leading carrier by water, submitted without protest. We do not overlook a sentence that the appellant has lifted from its setting and put before us as a finding. "If respondents succeed, the barge lines will be dealt a staggering blow." Taken by themselves the words suggest a finding that the new schedules will affect the barge lines to the point of destruction, or something very near it. Read in the light of the context, they are not a finding at all, but a summary of the grounds of protest, an outline of the pleadings, or of what amounts to the pleadings before an administrative body. This being so, we do not now consider whether the destruction of a rival through the mere force of competition is legally a wrong, unless "disinterested malevolence" (*American Bank & Trust Co.* v. *Federal Reserve Bank*, 256 U.S. 350, 358), or something akin thereto, has supplied the motive power. *M. Steinert & Sons Co.* v. *Tagen*, 207 Mass. 394, 397; 93 N.E. 584; *Nann* v. *Raimist*, 255 N.Y. 307, 319; 174 N.E. 690.

There is no substance to the contention that the effect of the report is to give the sanction of the Commission to an illegal combination in restraint of trade and commerce.

Nor is there substance to the contention that discretion was abused by denying a rehearing. *United States* v. *Northern Pacific Ry Co.*, 288 U.S. 490, 494.

For the purposes of this appeal we have assumed, as it was assumed in the court below, that the appellant has a standing sufficient to maintain the suit. See, however, *Sprunt & Son, Inc.* v. *United States*, 281 U.S. 249. We have made a like assumption in answer to the argument of counsel for the railways that the order of the Com-

mission is negative in form and substance, and hence not subject to review. *Alton R. Co.* v. *United States*, 287 U.S. 229. These objections to the suit coalesce to such an extent with the merits of the appellant's grievance under § 500 of the statute (Transportation Act, 1920) as to make it unnecessary to separate them.

The decree is

*Affirmed.*