McCRACKEN et al. v. UNITED STATES (INTERSTATE COMMERCE COMMISSION et al., Interveners).

Civil No. 963.

District Court, D. Oregon.

Oct. 30, 1942.

John M. Hickson, of Portland, Or., for plaintiffs.

S. R. Brittingham, Jr., Sp. Asst. to Atty. Gen., of Washington, D. C., and Carl C. Donaugh, U. S. Atty., of Portland, Or., for defendant United States.

Allen Crenshaw, Asst. Gen. Counsel, Interstate Commerce Commission, of Washington, D. C., for defendant Interstate Commerce Commission.

George M. Roberts, of Medford, Or., and William P. Ellis, of Portland, Or., for intervening defendant Pierce Auto Freight Lines, Inc.

Paul P. Farrens, of Portland, Or., amicus curiae.

Before HANEY, Circuit Judge, and BOWEN and FEE, District Judges.

JAMES ALGER FEE, District Judge.

Pierce Auto Freight Lines, Inc., was granted authority to conduct certain designated motor carrier operations in interstate commerce between Portland, Oregon, and San Francisco, California, by order of the Interstate Commerce Commission under the applicable statute.[1] Plaintiffs here are three competitors of the Pierce Lines who instituted this action to set aside the order,[2] because they claim to have suffered damage from the operations conducted pursuant thereto.

---

[1] The references to Sections 206(a) and 208 indicate these portions of Motor Carrier Act of 1935, now incorporated in Part II, Interstate Commerce Act, 49 U. S.C.A. §§ 306(a), 308.

[2] 28 U.S.C.A. § 41(28), §§ 43–48.

Pierce Lines presented its application to the Commission February 12, 1936, for a certificate of convenience and necessity, under section 206(a), dealing with prior rights based upon past operations. Plaintiffs here appeared in the proceedings. Hearings were had before a joint board. A Division of the Commission issued a report favorable to authorization of the continuance of operations between Portland and Medford, Oregon, serving all intermediate points. Upon complaint to the Commission, the case was re-assigned for hearing before a joint board. After report of the joint board and a hearing, the full Commission affirmed the Division and refused to restrict the authority of the Pierce Lines to transport property between intermediate points north of Drain, Oregon, a point north of Medford and south of Portland, as well as to such points from points below Drain and from such points to Portland and to points south of Drain. This proceeding was initiated to set aside that portion of an order of the Interstate Commerce Commission which granted to Pierce Auto Freight Lines, Inc., the right to transport property to and from such intermediate points. The basis of the attack is the alleged failure of the evidence [3] to show that the Pierce Lines ever transported property between such intermediate points north of Drain and that the order is therefore unsupported by the evidence and is arbitrary and void.

 The record seems to show adequate basis in pleading by the supplemental application, if not the original, for the allowance of these rights. Nor is this position shaken by the recitals of certain colloquies between counsel at certain of the hearings. The Commission controls the adjective regulations of proceedings before it, and there is no doubt that the matter was fully and clearly presented. Courts in reviewing proceedings should look through form to substance. If a matter has been fairly heard, especially before an administrative body, no order or finding should be overturned because of formal defect. Furthermore, this is not a question of procedure. The rights claimed by the applicant or disclaimed cannot control the performance of the specific duty, if it be found such is, enjoined upon the Commission by the

terms of 208, to consider public necessity and convenience in placing terms, limitations or conditions upon the right to which applicant was found to be entitled under the provisions of 206(a).[4]

There is no direct finding in the report of the Commission that the Pierce Lines transported property between points intermediate to Portland and Drain during the critical period. A review of the record also shows that the proof did not establish transportation between such points. There is, however, clear evidence that during this time goods were carried from points intermediate to Portland and Drain both to Portland and to points south of Drain and were carried to said intermediate points from Portland and from points south of Drain.

The order is, therefore, in this narrow respect unsupported by the evidence. But it is contended by the United States and the Commission that the latter had power by statute to permit or compel Pierce Lines to carry property without limitation to and from such intermediate points.

Legislation was enacted to bring the motor transport industry under control and prevent abuses of unsafe and uneconomic operation in that field. If the industry had not been already in existence, a more symmetrical operation throughout could have been planned. The only excuse for invading the field was the public convenience and necessity. In view of the immense sums of money invested in equipment and facilities, Congress granted rights of operation along the route or routes or within the territory previously served by a carrier. To have done otherwise would have amounted to virtual confiscation. By the process valuable property rights were conserved.

In the earlier phases of enforcement with the approval of the courts, the Commission strictly construed the rights and privileges confirmed by the legislative expression by finding limitations and conditions precedent therein in accordance with their construction of Congressional policy and the public interest. This tendency toward too narrow construction of the rights confirmed to existing carriers has latterly been checked by highest authority.[5]

[3] See Mississippi Valley Barge Line Company v. United States, 292 U.S. 282, 286, 54 S.Ct. 692, 78 L.Ed. 1260.

[4] See Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147.

[5] United States et al. v. Carolina Freight Carriers Corporation, 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971.

Even so, there is often a clear conflict between the public convenience and necessity and the rights thus confirmed.[6] However, the principle is clear that if the operator had strictly complied with the requirements of the statute, his right to operate should be recognized. But the legislation set up the transportation system as a comprehensive whole, each part of which was dependent upon every other part and all controlled in the interest of the public. The Commission was given power and discretion as to methods of regulation to this end.[7]

It was obvious that some provision was required which would permit the Commission, while confirming all privileges and rights guaranteed to the existing carriers by the statute, to lay the foundations of a consistent transportation system by modifying other operations in accordance with a symmetrical plan in the public interest.

Congress, in order to render the elimination of excrescences more easy and the building of the transportation structure more symmetrical, by Section 208 gave the Commission power to prescribe "terms, conditions, and limitations as the public convenience and necessity may * * * require".

While the Commission had no power to take away any rights or privileges thus confirmed by Congress to an established operator, they could place such terms in the certificate as were required by public necessity to make the operations conducted thereunder consistent with operations carried on by others and convenient for the public. While an applicant might be deprived of the right to serve certain points to which he had actually transported property during the critical period, if he failed to ask for such rights in his application, the reverse is not true, since the Commission could add such terms or conditions, even if he were unwilling.

The statute does not require any pleading or notice by the Commission of their intention to impose such terms, conditions or limitations in the public interest. Certainly, there is no requirement that applicant for a "grandfather" certificate pray that such clauses be added to his certificate. No notice is required to competitors, because the statute assumes that the public and the applicant are alone interested in the granting of a "grandfather" certificate.[8] But in the instant proceeding, both the applicant and the competitor were heard.

In confirming existing rights by certificate or in adding terms, conditions and limitations thereto, the Commission need not be concerned whether the operation permitted by the certificate so limited was pleasing to the applicant for "grandfather" rights, nor whether on the whole it would be profitable. Otherwise, an applicant could forget the portion of the territory previously served by him which might prove unprofitable and ask only for that which was sure to make money, irrespective of the public interest, and the Commission would be powerless. Further, the Commission could not be controlled by the question whether such an addition to the certificate would be pleasing or profitable to a competitor. Otherwise, the results would be obvious. Congress intended the public interest to be paramount in this regard.[9] No provision was made to render the operating rights of a competitor more valuable by failure to require competition in efficient management of the transportation system as a whole.

The mere fact that the evidence does not show that Pierce Lines in the past had covered these intermediate points in all possible combinations and permutations did not prevent the Commission from imposing on the carrier the necessity of transporting property between these intermediate points, as well as to and from such points, as a condition to the exercise of the privileges confirmed by the certificate.[10]

[6] United States v. Maher, 307 U.S. 148, 59 S.Ct. 768, 83 L.Ed. 1162.

[7] See Interstate Commerce Commission v. Chicago, Rock Island & Pacific Railway Company, 218 U.S. 88, 103, 30 S.Ct. 651, 54 L.Ed. 946.

[8] But see Alton Railroad v. United States, 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586.

[9] Clarence Tarbet Common Carrier Application, 31 M.C.C. 63, 66, 67.

[10] The applicant here desires the rights in controversy. See United States v. Carolina Freight Carriers Corporation, supra, 315 U.S. 488, 62 S.Ct. 729, 86 L.Ed. 971, where the court, dealing with the case where the carrier desired such rights, say: "To freeze them into the precise pattern of their prior activities as was done here not only may alter materially the basic characteristics of their service; it also may well be tantamount to a denial of their statutory rights."

■ The plaintiffs misconceive their rights in the matter. The only ground of attack could be that the public necessity and convenience were not served. The Commission found to the contrary.

The order of the Commission is valid and is upheld.

The complaint is dismissed.