**GENERAL MOTORS CORPORATION,**
Plaintiff,

v.

**UNITED STATES of America and Interstate Commerce Commission,**
Defendants,
**The Alabama Great Southern Railroad Company et al., Intervening Defendants.**

Civ. No. 19633.

United States District Court
E. D. Michigan, S. D.
March 16, 1961.

Henry M. Hogan, Detroit, Mich., for plaintiff General Motors. Walter R. Frizzell and E. J. McGratty, Jr., Detroit, Mich., of counsel.

Arthur J. Cerra, Asst. Gen. Counsel, ICC, James A. Murray, Assoc. Gen. Counsel, ICC, Washington, D. C., for Interstate Commerce Comm.

J. Edgar McDonald, New York City, Frederick L. Wyckoff, Detroit, Mich., for intervening defendant.

George E. Woods, U. S. Atty., Detroit, Mich., for defendant The United States.

KAESS, District Judge.

This action is brought by plaintiff to set aside certain orders of the Interstate Commerce Commission and to enjoin their enforcement. The Alabama Great Southern Railroad Company, along with approximately one hundred fifty other railroads, intervened as defendants.

The general subject matter in this controversy is the applicability of tariff rates as imposed by railroads. Prior to May 30, 1952 there existed class rates within and between official (eastern), southern, southwestern and western truckline territories. However "exceptions" to these class rates were established and took precedence over such class rates, in order to meet competition to the railroads. On the above date however, in Docket No. 28300, the Interstate Commerce Commission prescribed a single uniform class rate structure between all points in the United States east of the mountain-pacific territory. It was made clear that this uniformity did not contemplate the exception rates. The result of the order was to have two sets of rates in effect, one applicable on traffic subject to the old exception ratings, and the other on traffic subject to the uniform classification ratings.

At the time the shipments in issue took place, the new class rates were in effect for the southern territory. The items shipped were a mixed carload of cooling boxes, drying machines, refrigerators and electric stoves from the plaintiff's Frigidaire plant in Lorraine, Ohio, to

various southern destinations. The new class rates had each of the items shipped separately rated, but it also had a mixed carload rating which was lower and would apply under the mixed carload rule. However the railroad applied the "exception" ratings under the old structure on all the individual items shipped. There was no *carload* exception rating.

The railroad relied on Item 300–B of the new class rates, which read:

"Class rates published in tariff, as amended, will not apply where there is in effect on a given shipment a commodity rate, classification exception or column rating between the same points via any route."

The railroads argue in all these proceedings that this allowed them to charge the exception rates for the various items shipped. These exception rates provided for a higher fare than the mixed carload rating of the new classification rating schedule.

The plaintiff argues that since there was no separate exception rating for a mixed carload shipment to correspond with the one in the class rate schedule, this section did not apply.

Plaintiff filed a complaint with the Commission on March 7, 1955, attacking the method used by the railroad for computing the charges on mixed carload shipments. The examiner recommended that the complaint be dismissed. Exceptions were filed and on June 26, 1957 Division 2 of the Commission reversed the examiner and found the rates and charges collected were inapplicable. The railroads involved filed a petition for reopening and on April 20, 1959 the full Commission, in a divided opinion, modified the findings of Division 2 and determined that the rates charged by the railroads in this type of situation were applicable, Docket No. 31757. On November 9, 1959 the Commission denied a petition for reopening, reconsideration and modification of the adverse portion of decision against plaintiff who thereupon started this action to review the orders of the Commission.

All parties have submitted extensive briefs, and we have examined all the decisions and many of the briefs submitted before the Commission. Our decision must boil itself down to two basic issues:

(1) Does the court have jurisdiction to review this case, and if so

(2) Was there a "rational" basis for the orders of the Commission?

The jurisdictional issue is concerned with an interpretation of 49 U.S.C.A. § 9, which reads in pertinent parts:

"Any person * * * claiming to be damaged by any common carrier * * * may either make complaint to the Commission * * * or bring suit * * * for the recovery of the damages * * * in any district court of the United States * * *; but such person * * * shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure * * he * * * will adopt."

Plaintiff admits that they may not litigate this case *de novo* in this court, but argues that this section is *not* a bar to judicial review of a case decided by the Commission, citing United States v. I. C. C., 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451, and Great Lakes Steel Corp. v. United States, D.C., 115 F.Supp. 31, affirmed 6 Cir., 220 F.2d 751, certiorari denied 350 U.S. 821, 76 S.Ct. 47, 100 L.Ed. 734. In United States v. I. C. C. the railroads refused to grant a deduction on freight rates against the United States, which had assumed wharfage expenses formerly imposed upon the railroad. The Supreme Court held that the district court could review the order of the Interstate Commerce Commission denying the deduction claimed by the United States. It must be noted, however, that the court did not by this decision grant blanket review of all ICC orders. They tempered their decision by distinguishing it from several earlier cases which had denied review. The court declared that in this case there was a question of "reasonableness" of

the rates, involving an exercise of the Commission's "primary jurisdiction" while the others were simply reparation cases and nothing else. Thus the court decided that where an administrative determination of part of the case had to be made, the court may review the entire decision of the Commission.

In J. D. Pittman Tractor Co. v. United States, D.C.1954, 121 F.Supp. 162, the issue concerned whether the lower classification rates or the higher exception rates applied in a shipment of tractors and parts from Peoria, Illinois, to Birmingham, Alabama. The court refused to review the Commission's order, stating at page 165:

"The lawfulness of the Commission order relates only to the legal correctness of its denial of the reparations claimed in the suit filed before the Commission. If that suit had embraced both the issue of *reasonableness of the rates* and *that of reparations,* this court would have jurisdiction under United States vs. ICC, supra. Such is not this case. Where, as here, the question is one involving solely the application of rates, and thus not involving the primary jurisdiction of the Commission, and where, as here, the suit could have been brought in this court in the first instance, this court will not, in the face of Section 9, sit as a reviewing court to correct procedural errors or to pass on the legal correctness of the Commission's denial of reparations."

■ The situation in this case closely parallels the Pittman case. No part of this case involves an administrative determination that dictated a decision by the Commission in the first instance. Significantly the plaintiff nowhere claims that there was a reason other than choice in their application to the Commission. This court could have applied the law to the facts in the first instance and adjudicated the matter. Since this matter presents only an issue of reparations, this court cannot review the orders of the Commission. See Standard Oil Co. (Indiana) v. United States, 1931, 283 U.S. 235, 51 S.Ct. 429, 75 L.Ed. 999; Baltimore & Ohio R. R. Co. v. Brady, 1933, 288 U.S. 448, 53 S.Ct. 441, 77 L.Ed. 888.

Even though we have effectively disposed of this matter on the first issue, we feel constrained to say something about the merits of this case, in the hope that it may assist the parties.

The parties appear to agree that if there is judicial review, it should be restricted to a determination of whether there was a "rational" basis for the Commissioner's orders. See Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260. This is just another way of saying that the Commission's orders must be supported by substantial evidence. Great Lakes Steel Corp. v. United States, supra. Thus we must first decipher the basis for the conclusions of the Commission and then determine whether it is "rational", i. e., supported by substantial evidence.

The ratings in this case were as follows:

| Article | Classification Rating | Exceptions Rating |
|---|---|---|
| Cooling Boxes | 55 | 45 |
| Drying Machines | 60 | 47–55 |
| Refrigerators | 55 | 45 |
| Electric Stoves | 45–60 | 40–42 |
| Above Articles in one car (Mixed Carload) | 55 | None |

When the new ratings were first published, the following rule was adopted to preserve the exception ratings:

"Class rates published herein from and to all points via all routes are not applicable *on any article or commodity* where there is in effect a commodity rate, classification exception or column rating between the same points via any route *on such article or commodity.*" (Emphasis added.)

The rule was subsequently changed to read:

"Class rates published in tariff, as amended, will not apply where there is in effect *on a given shipment* a commodity rate, classification exception or column rating between the same points via any route." (Emphasis added.)

This change was prompted by the contention that the words "on any article or commodity" would prevent the application of the uniform class rates on carload shipments of any article or a commodity if there were exceptions applicable on less than carload shipments. The Commission said at page 5 of their opinion, concerning this matter:

"The defendants' objective in publishing item 300 was to remove any possible alternation of the uniform class rates where exception ratings were established, and the original phrasing of the provision makes that fact abundantly clear. The question then is, did the substitution of *'on a given shipment'* for *'on any article or commodity'* so alter the meaning of the provision as to warrant a determination that the original objective also was intended to be changed. Bearing in mind the reason for the amendment of the language, we think a fair and reasonable interpretation of the provision is that where an exception rating or ratings (in the case of mixed-carload quantities) were in effect 'on a given shipment', the uniform class rates could not be considered in determining the applicable charges."

Without going into plaintiff's interpretation of the above section, this court cannot deny that there is a "rational" basis for the Commission's conclusions. Their main consideration was the object sought to be accomplished and they applied a reasonable construction of the language to accomplish it. We cannot draw conjecture as to what our interpretation would have been had this case been presented here in the first instance. We are satisfied that the Commission's orders were the result of the consideration of all the evidence and applying an interpretation commensurate with that evidence.

It should be noted, also, that Item 110–G of the exception rating, by its very words and in accordance with interpretations given several times by the Commission, applied only in relation with the old southern classification and not the uniform classification rating as argued by the plaintiff. Thus it has no bearing in this case whatsoever.

Therefore, It Is Ordered that the relief prayed for in the complaint be and it is hereby denied, and the complaint be and it hereby is dismissed.