Argued September 6, affirmed October 24, petition for
rehearing denied November 20, 1962

## PORTLAND STEAMSHIP OPERATORS ASSO-
## CIATION *v.* BOARD OF PILOT COM-
## MISSIONERS ET AL

### 375 P. 2d 420

*Alex L. Parks,* Portland, argued the cause for ap-
pellants James W. Powell and the Columbia River
Pilots Association. On the brief were Dusenbery, Mar-
tin, Beatty & Parks, Portland.

*Carl R. Neil,* Portland, argued the cause for re-
spondent Portland Steamship Operators Association,

Inc. With him on the brief were Gunther F. Krause and Krause, Lindsay & Nahstoll, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and LUSK, Justices.

O'CONNELL, J.

Defendants appeal from a judgment of the circuit court for Multnomah county which set aside two orders of the Oregon Board of Pilot Commissioners granting increases in pilotage rates.

The Columbia River Bar Pilots Association and the Columbia River Pilots Association each filed petitions with the Board of Pilot Commissioners requesting increases in pilotage rates. Hearings on both petitions were held at the conclusion of which the board granted, in part, the increases requested. Plaintiff, the Portland Steamship Operators Association, filed an appeal to the circuit court for Multnomah county attacking the board's order on various grounds. The principal ground was that the board's findings of fact were not supported by substantial evidence in certain particulars. The circuit court set aside both orders and remanded both cases to the board for further proceedings. The Columbia River Bar Pilots Association has not appealed from the judgment. Therefore, it is not necessary to recite the grounds upon which the court based its decision in that case, nor to determine whether the order was properly set aside.

The judgment setting aside the order granting an increase to the river pilots was based upon the ground that the findings of fact in certain particulars were

not supported by substantial evidence. The pertinent findings were as follows:

"III.

"Through increased traffic and more efficient operation, the average earnings of individual Columbia River Pilots have been increasing in amounts at least sufficient to meet increases in costs of living and the increased cost of operation.

"IV.

"There has been some increase in the hours of work required of the average river pilot which if met by the addition of one or more pilots will result in some diminution of net earnings of each pilot.
"* * * * *

"VI.

"A differential between the average earnings of Columbia River Bar Pilots and Columbia River Pilots has been maintained over the years and the earnings of the Bar Pilots have substantially exceeded those of the River Pilots.

"VII.

"The existence of some differential may be justified, but too great a disparity will necessarily attract larger numbers of qualified applicants to pilotage upon the Columbia River Bar and fewer upon the Columbia River.

"VIII.

"The increases granted to the Columbia River Bar Pilots effective August 1, 1961, will result in widening the present gap and will create an inequitable situation and one that is bound to have adverse effect upon pilotage in general in this area.

"IX.

"On the basis of the increases granted to the Columbia River Bar Pilots, it is reasonably neces-

sary that modest increases likewise be granted upon the Petition of the Columbia River Pilots."

In the bar pilots case the board had allowed an increase in rates to provide for additional personnel in the bar pilots association's operations. This did not increase the compensation of the individual bar pilots but did result in decreasing the number of hours each pilot would be required to work at the same compensation he had been receiving prior to the increase in pilotage rates allowed by the board.

It will be noted that finding of fact VIII in the river pilots case recites that "[t]he increases granted to the Columbia River Bar Pilots effective August 1, 1961, will result in widening the present gap and will create an inequitable situation and one that is bound to have an adverse effect upon pilotage in general in this area." Finding of fact IX then recites that on the basis of the increases granted to the bar pilots it is reasonably necessary that increases be granted to the river pilots. But, as pointed out above, the action of the board in increasing the pilotage rates for the bar pilots association did not increase the earnings of the individual bar pilots. The trial court concluded that because the board's order did not result in increasing the individual earnings of the bar pilots "there can be no widening of the differential between river and bar pilots and therefore Findings of Fact VIII and IX are based upon no substantial evidence." The trial court recognized that although finding of fact IV was supported by evidence, the board's order increasing the pilotage rates for the river pilots was not based upon that finding of fact.

The authority to review the board's orders is found

in ORS 776.165, which is set out in the margin.[1] The board's order is attacked on the ground that it did not meet the requirement set forth in subdivision (4) of ORS 776.165 which provides that "If findings of fact are made, the findings of fact support the order or decision under review." The findings of fact will not support the order unless the findings of fact are based upon evidence. This is the clear import of ORS 776.155 which provides in part that "the board shall prepare and file findings of fact and conclusions of law *upon the evidence and the record* received in the matter."[2] (Emphasis supplied).

Was there evidence to support the board's conclusion that the increase granted to the bar pilots would create a disparity productive of inequities and adverse consequences to pilotage in the area? As we have already noted, the increase granted to the bar pilots did not result in any increase in the earnings of the in-

---

[1] "776.165 An appeal may be had to the circuit court from any order, decision or adoption of any rule or regulation. The appeal shall not be extended further than to determine whether:

"(1) The board acted without or in excess of its powers, or in violation of law.

"(2) The order or decision was procured by fraud.

"(3) The order, decision, rule or regulation is unreasonable.

"(4) If findings of fact are made, the findings of fact support the order or decision under review."

[2] The full text of ORS 776.155 is as follows:

"After the completion of the taking of evidence and the conclusion of the hearings, and within a reasonable time, the board shall prepare and file findings of fact and conclusions of law upon the evidence and the record received in the matter and shall make and file its order, decision, or adopted rule and regulation, thereon. The findings of fact and conclusions of law may be embodied in the same instrument with the order or may be embodied in a separate instrument. The findings of fact, conclusions of law and order thereon shall be signed by the board. The order shall state the date it becomes effective. A copy of the findings of fact and conclusions of law and a copy of the order shall, upon the filing of the same, be mailed to each of the parties to the proceeding."

dividual pilots. Therefore there was no "widening" of the gap between the earnings of bar pilots and river pilots in terms of take home compensation. However, the board created a disparity in the sense that its order would permit the bar pilots to receive the same earnings for fewer hours of work. Neither the board's findings nor its written opinion indicate whether this latter disparity was the basis for the board's conclusion. The reference in finding of fact IV to "the net earnings of each pilot" suggests that the board had in mind a monetary disparity rather than a disparity in the leisure time available in the respective jobs.

However, it is not necessary for us to resolve this ambiguity because we are of the opinion that the board's order is not supported by evidence in still another sense. The order is based upon the premise that a disparity in the earnings per hour would "necessarily attract larger numbers of qualified applicants to pilotage upon the Columbia River Bar and fewer upon the Columbia River." As revealed in the findings themselves, this premise is at the heart of the reasoning process by which the board concluded that an increase should be granted to the river pilots. And yet there was no substantial evidence to support this conclusion. There was no evidence closely bearing upon the supply of and demand for pilotage services.[9] Nor

[9] ORS 776.115 (7) provides as follows:

"(7) In fixing fees pursuant to subsection (6) of this section, the board shall give due regard to the following factors:

"(a) The length and net tonnage of the vessels to be piloted.

"(b) The difficulty and inconvenience of the particular service and the skill required to render it.

"(c) The supply of and demand for pilotage services.

"(d) The public interest in maintaining efficient, economical and reliable pilotage service.

"(e) Other factors relevant to the determination of reasonable and just rates."

is there any evidence supporting the premise that the disparity with which the board was concerned would have had any substantial effect on the availability of men for either type of pilotage. The description of the duties performed by the two types of pilots furnishes reason to believe that the disparity mentioned would not attract the river pilots to the much more dangerous work involved in bar pilotage. For all we know they would not even be qualified to become bar pilots without the acquisition of additional skills. Moreover, it is to be remembered that the number of pilots is regulated by the board. (ORS 776.115 (3)). Each pilotage association contains relatively few members. The record does not disclose whether this is the result of a limited supply of men applying for the respective positions or because the board prefers to keep the compensation at a high level by limiting the association membership.

The plaintiff was not given an opportunity to challenge the hypothesis upon which the board based its conclusion. The facts assumed by the board were near the center of the controversy between the parties. The board expressly keyed its decision to increase the river pilotage rates to the factor of availability of men and the competition for the respective jobs and yet there is nothing in the record supplying the support for these foundational assumptions. The requirement that findings be supported by identifiable evidence rests upon the ground that the party adversely affected by the administrative order should have an opportunity for cross-examination and to offer evidence in rebuttal.[9] Findings supported by evidence are required because without them it would be impossible for the court, in reviewing administrative action, to determine whether

[9] 2 Davis, Administrative Law Treatise § 15.14 at 432 (1958).

the administrative agency acted within the limits of the authority delegated to it.[5]

It is urged by defendants that there was evidence to support the board's findings in the particulars mentioned above. We have been unable to find it in the record. The members of the board may have had knowledge of the supply of and demand for pilotage services, but the doctrine of official or judicial notice should not be extended to embrace evidence of this character. Even if it were so extended, plaintiff should have had warning that it would be used as a basis for the board's decision.[6]

The trial court remanded the case to the board for further proceedings. This was the proper disposition of the case.

The decree of the lower court is affirmed and the cause is remanded for further proceedings not inconsistent with this opinion.

---

[5] As stated by Valley & Siletz R. R. Co. v. Flagg, 195 Or 683, 711, 247 P2d 639, 652 (1952):

"* * * [Judicial review] cannot be properly performed unless the court knows the view which the agency entertained of the fact issues. If an erroneous conception of the law is hidden in some undisclosed finding of fact, it very likely will escape detection and correction by the courts."

Accord, Davis, supra § 16.14 at 489; Schwartz, American Administrative Law 107–108 (1950).

[6] Pierce Freight Lines v. Flagg, 177 Or 1, 39, 159 P2d 162, 177 (1945). As stated by VI Wigmore, Evidence § 1805, p. 257:

"* * * It ought to be elementary, as it is fundamental, that they [administrative officials] should make no use of relevant matters in their personal (supposed) knowledge, or in their official documents, without stating them and putting them into the record during the hearing. Otherwise, the party affected has no fair chance to test and perhaps dispute that supposed knowledge; nor is the appellate tribunal furnished with a dependable record."

Accord: Stephan, The Extent to Which Fact-Finding Boards Should be Bound by Rules of Evidence, 24 ABAJ 630, 634 (1938); 44 Yale L J 355 (1934). See also, 2 Davis, Administrative Law Treatise §§ 15.08, 15.14 (1958).

SLOAN, J., dissenting.

I think the trial court and the majority here have exceeded proper limits of judicial review. I would adhere to the rule best expressed by Justice Cardozo in *Mississippi Valley Barge Co. v. U. S.*, 1934, 292 US 282, 286, 54 S Ct 692, 694, 78 L Ed 1260, 1265:

> "The findings in the report being thus accepted as true, there is left only the inquiry whether they give support to the conclusion. Quite manifestly they do. The structure of a rate schedule calls in peculiar measure for the use of that enlightened judgment which the Commission by training and experience is qualified to form. Florida v. United States, April 2, 1934, 292 U.S. 1, ante, 1077, 54 S.Ct. 603. It is not the province of a court to absorb this function to itself. (Citing cases). The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body."

And see *Rochester Telephone Corp. v. U. S.*, 1939, 307 US 125, 59 S Ct 754, 83 L Ed 1147; *I.C.C. v. Jersey City*, 1944, 322 US 503, 64 S Ct 1129, 88 L Ed 1420; *Allegany Corp. v. Breswick & Co.*, 1957, 353 US 151, 77 S Ct 763, 1 L Ed2d 726.

It is apparent that there was a "rational basis" for the board's conclusions and they should be affirmed.

There is another reason for my dissent. The record before us includes an opinion by the board which was given some time prior to the date that the findings of fact were entered. The opinion expressly stated the basis of the board's decision and invited proposed findings of fact. The opinion expressed an attitude of willingness to hear argument on the proposed findings of fact. The record does not disclose that plain-

tiff availed itself of this opportunity. The board was never given an opportunity to consider the objections later made by plaintiff in the trial court. When a board invites consideration of and objection to proposed findings the party who fails to present its objections to the board should not be permitted to raise the objections for the first time in the circuit court.

For the reasons stated I dissent.