Vincent A. Lupiano, J.
Petitioners seek a judgment annulling a determination of the Board of Education rezoning elementary Public School 6, Borough of Manhattan, effective as of the school term commencing September, 1964, and enjoining such board from rezoning said school so as to transfer involuntarily petitioners’ children and the children of others similarly situated to other schools solely because of the race, creed, color or national origin of such pupils.
Public School 6 is a well-known and very desirable elementary school with classes from kindergarten through the sixth grade. It is located on Madison Avenue between 81st and 82nd Streets. Up to June 26, 1964, it embraced an area of 120 square blocks, running north and south from 92nd and 94th Streets to 63rd Street, and east and west from Third Avenue to Fifth Avenue; the area included some of the best quality residences in New York City. The reorganization plan of June 26,1964 reduced its geographic size to an area of 71 square blocks.
The background of the present controversy commences with the adoption, on May 28, 1964, by the Board of Education of a program of action directed toward the achievement of quality integrated education in the New York City public schools beginning with the school year September, 1964. After considerable local opposition, the Board of Education rejected its own “ community zoning plan” for pairing Public School 6 and Public School 198, Manhattan.
On May 28, 1964, after several local hearings, the Board of Education approved the Local District Plan affecting School Districts 5, 7 and 9, developed by Assistant Superintendent Scalea in charge of said school districts. The Local District Plan in essence has two aspects:
1. The rezoning of Public School 6 in District 7.
2. The voluntary transfer of pupils from the overutilized District 9 schools (Public Schools 72, 121 and 168) to underutilized schools in the Yorkville area (predominantly District 7).
As of September, 1963, the schools in East Harlem, District 9, were functioning with an overcapacity of pupils resulting in part-time sessions, overlapping sessions, etc.; schools in District 7 (Public Schools 59, 183, 158, 190) were underutilized and were being used as “ receiving schools ” in the Board of Education’s approved open enrollment program, and Public School *358 6 in District 7 became overutilized, resulting in the placement of five first-grade classes on overlapping sessions of fewer than five hours, an average class register which exceeded the established citywide average class register and a large proportion of classes with registers greater than the maximum number established by Board of Education policy. Such classification of Public School 6 as overutilized is not controverted (albeit that petitioners seek to engage in an argument of semantics by contending that the overcapacity enrollment was caused by pupils “ attending the school either illegally or as part of special programs ”)•
In order to decrease enrollment at Public School 6, the Local District Plan, in addition to other supplementary measures, rezoned the school attendance area of the public school in question by transferring peripheral sections to schools within the same or a contiguous school district. As a result, 214 children who formerly attended Public School 6 have been transferred to underutilized Yorkville schools which are situated at least as close to their residences, except in a few cases where the new school is perhaps 200 to 300 feet farther from their residences. It should be noted that in the case of each of the children of the three named petitioners, the newly assigned school is closer in proximity to his or her residence than is Public School 6.
Rezoning eliminated the overutilization of -Public School 6. To alleviate the extreme overutilization of schools in District 9 in East Harlem (Public Schools 72, 121 and 168) a program of voluntary transfers to Yorkville schools (Public Schools 59, 158, 183, 190, 198 and Public School 6 which after rezoning had available space for transfer students) has been effectuated.
The net effect of Local District Plan is the elimination of overutilization, and all of its attendant ills, in each and all of the schools encompassed within the three school districts under Superintendent Scalea’s jurisdiction. In addition, as a result of the voluntary transfers from East Harlem to Yorkville schools, the ethnic distribution in the Yorkville schools of Negro and Puerto Rican children has tended to eliminate extreme racial imbalance; in the case of Public School 6 the distribution increased from approximately 5% to over 20%.
Concededly, Board of Education policy favors the more balanced ethnic distribution in Public School 6 as an important factor in achieving its goal of quality integrated education in New York City. In this connection, in Matter of Strippoli v. Bickal (21 A D 2d 365, 367-368) the Appellate Division, Fourth Department, stated: “Nevertheless, a determination of the *359 Board of Education which is otherwise lawful and reasonable does not become unlawful merely because the factor of racial balance is accorded relevance.” Moreover, there are other relevant criteria involved, such as, utilization of school space, convenience of transportation, topographical barriers and continuity of instruction.
The responsibility for administering the public school system in the City of New York and determining where each pupil shall attend is vested by law in the Board of Education. Hence, in the establishment or reorganization of attendance zones, such criteria may be accorded proper weight in the formulation of a plan honestly and conscientiously constructed.
Petitioners contend that the ensuing racial integration constituted the sole motive for the rezoning of Public School 6 and that ' ‘ pupils presently attending Public School 6 are being transferred to other elementary schools solely to provide vacancies at the school for Negro and Puerto Rican children ” in contravention of the due process and equal protection clauses of the New York Constitution and the United States Constitution and in violation of section 3201 of the Education Law. Section 3201 of the Education Law provides that “ No person shall be refused admission into or be excluded from any public school in the state of New York on account of race, creed, color or national origin.”
Examination of the instant pleadings, affidavits and exhibits and the application thereto of the recent pronouncements of law by the Court of Appeals (Matter of Balaban v. Rubin, 14 N Y 2d 193) and other appellate courts in this State (Matter of Vetere v. Mitchell, 21 A D 2d 561 [3d Dept.]; Matter of Strippoli v. Bickal, supra), compel rejection of petitioners’ main contention.
Initially, it must be stressed that the rezoning affects the redistricting of only white children and thus, under the fact pattern here presented, generates no basis per se for consideration of the asserted element of discrimination. The children transferred from Public School 6 were not excluded from a school to which they were entitled to attend as of right. The children were transferred pursuant to and consonant with the newly drawn attendance zone of Public School 6 and those of Public Schools 59,183,190 and 198, and each child so transferred was assigned to the neighborhood school whose geographic attendance zone, as formulated and delineated by the Board of Education, encompassed the particular child’s residence.
Thus, the pivotal point upon which determination of the present matter hinges is the validity of the Board of Education’s *360 formulation and demarcation of the school attendance zones here involved. The conventional juristic touchstone to test this exercise of administrative zoning power is whether the zoning is arbitrary, capricious or unreasonable.
‘ ‘ The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body ” (Mississippi Val. Barge Co. v. United States, 292 U. S. 282, 286-287), and neither alternative methods urged by petitioners nor other solutions preferred by the court may be substituted for an administrative ruling so predicated.
In viewing the newly drawn geographical lines of demarcation marking the boundaries of Public School 6 and those of the affected schools immediately bordering said school and upon considering the various factors and criteria involved in establishing the subject attendance zones, this court cannot say that the zones constitute an unreasonable, arbitrary or capricious exercise of the Board of Education’s zoning power; or that a constitutional or statutory right was violated.
The former Public School 6 attendance zone encompassed an inordinately extended area from north to south. The new zone eliminates these extremities and presents a more reasonable, normal and regularly shaped area. Utilization of school facilities within the area affected by the rezoning has become more evenly balanced. All of the affected schools are within the supervisory jurisdiction of the same Assistant Superintendent of Education. Each of the involuntarily transferred children (with the exception of a few whose residence is some 200 to 300 feet farther from the newly assigned school than from Public School 6) will travel the same or in most instances a shorter distance to his new school. The neAvly assigned schools are “neighborhood” schools.
The foregoing and many other factors combine to form a rational basis for the subject zoning promulgated by the Board of Education. Nor, as confined to the particular petitioners’ circumstances of the matter now before this' court, does the voluntary transfer of students from the overutilized East Harlem, District 9, schools to the Yorkville schools (including Public School 6) as part of the Local District Plan affect this determination of rational basis and hence validity of the subject school attendance zones (see Matter of Balaban v. Rubin, 14 N Y 2d 193, supra). No constitutional or statutory right of these petitioners was violated. Accordingly, the instant application is denied and the petition dismissed.