**SAFEWAY TRAILS, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

and

**Greyhound Lines, Inc., Intervenor-Defendant.**

**Civ. A. No. 1800-64.**

United States District Court District of Columbia.

Sept. 29, 1964.

William A. Roberts and Morris J. Levin, Washington, D. C., for the plaintiff.

William H. Orrick, Jr., Asst. Atty. Gen., David C. Acheson, U. S. Atty., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for defendant United States of America.

Robert W. Ginnane, Gen. Counsel, and Clarence William Vandegrift, Atty., Interstate Commerce Commission, Washington, D. C., for defendant Interstate Commerce Commission.

Robert J. Bernard, Chicago, Ill., and L. C. Major, Jr. and J. G. Dail, Jr., Washington, D. C., for the intervenor-defendant.

Before WRIGHT, Circuit Judge, and HART and ROBINSON, District Judges.

J. SKELLY WRIGHT, Circuit Judge.

Plaintiff seeks to set aside the report and order of the Interstate Commerce Commission, Division One,[1] authorizing Greyhound Lines, Inc. to pick up and discharge passengers and express freight along certain specified routes between Philadelphia, Pennsylvania, and the New Jersey Turnpike, except "that no traffic may be transported under this authority which originates at or is destined to Philadelphia, Pa., or New York, N.Y." In support of its petition to annul, Safeway Trails, Inc. alleges, citing Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L. Ed.2d 1403 (1957), that Greyhound's application was amended after publication contrary to the rules[2] of the Commission, and that the Commission's report and order were unsupported by substantial evidence. We uphold the Commission's action.

I.

Safeway Trails, as an operator of interstate buses, is certificated to pick up and discharge passengers and express along certain specified routes in the Camden area between Philadelphia and the Turnpike. Greyhound Lines, as part of its national network, passes over these approaches to Philadelphia from the

---

1. Plaintiff's petition for rehearing by the full Commission, alleging an issue of general transportation importance, was denied.

2. 49 C.F.R. §§ 1.241(a) (Supp.1964) and (b) (1963), as amended, read:

"(a) *Scope of special rules.* These special rules govern the filing and handling of applications for certificates, permits, and licenses respecting the transportation of property or passengers under sections 206, 209, and 211 of the Interstate Commerce Act. Except as otherwise herein provided, and except as provided in § 1.247, the general rules of practice shall apply. Amendments to applications which broaden the scope of proposed operations will not be allowed if tendered after notice of the filing of an application has been published in the FEDERAL REGISTER.

"(b) *Notice to interested persons.* (1) Notice to interested persons of the filing of such applications shall be given by publication in the FEDERAL REGISTER of a summary, prepared by the Commission, of the authority sought."

Turnpike, but prior to the Commission's order had no authority to pick up or discharge passengers or express. In fact, Safeway Trails is the only non-local carrier with such authority presently operating.

Pursuant to the Commission's rules, notice was filed in the FEDERAL REGISTER of Greyhound's application for authority to serve the area concerned in this litigation. In that notice it was stated that Greyhound was seeking to operate "between Philadelphia, Pa. and the New Jersey Turnpike, serving no intermediate points nor the Interchanges, except for traffic originating at or destined to points beyond Philadelphia, Pa., or New York, N. Y." The same notice also advised that: "Applicant states the purpose of this application is to remove a restriction contained in MC 1501 (Sub-No. 92), which would permit applicant to pick up and discharge passengers on its described routes, which passengers have as their destination or origin, a point beyond Philadelphia, Pa., or New York, N. Y." The certificate as issued, and challenged here by plaintiff, authorizes Greyhound to operate "between Philadelphia, Pa., and the New Jersey Turnpike, serving all intermediate points and the interchanges * * * subject to the restrictions (1) that no traffic may be transported under this authority which originates at or is destined to Philadelphia, Pa., or New York, N. Y. * * *."

It is Safeway Trails' contention that the certificate issued is broader than the application noticed and that, in effect, Greyhound's application was amended contrary to the Commission's rules. Safeway Trails is particularly concerned about traffic which, under the challenged certificate, would be picked up or discharged on the approach to the Turnpike going south from Philadelphia. It appears that Greyhound now operates through Philadelphia and Camden south via the Turnpike, serving Baltimore and Washington. Safeway Trails argues that traffic on this route, which is picked up or discharged in the Camden area, is not traffic originating or destined "beyond Philadelphia, Pa.," since it does not go through that city. The question presented is whether, contrary to 49 C.F.R. § 1.241(a), Greyhound's application was amended to encompass the authority contained in the certificate as issued. There is no suggestion that Safeway Trails has been misled, or otherwise prejudiced, by any difference which may exist between the application and the certificate as issued.

It must be owned that the application was not a masterpiece of draftsmanship. Actually, the emphasis on Philadelphia and New York in the application was to assure bus lines serving Camden-New York and Camden-Philadelphia that the requested authority did not cover that traffic. As to the intent of the application, Greyhound's operating officer testified:

"When we filed this application, we wanted to modify the restriction, and we did not want to get involved in the local traffic between Camden and Philadelphia and between Camden and New York. We wanted to make that clear, that we were not going to compete with that traffic. But it is our proposal to serve all other points beyond Philadelphia out of Camden and, in going in the other direction, beyond New York.

"Most of the service that we run south that goes through Camden does go via Philadelphia and thence south. But we do have some service that comes out of Philadelphia through Camden out to the New Jersey Turnpike, and then heads south.

"It is our proposal to pick up on that service at Camden to carry to points south."

 If it was in fact the intention of Greyhound to pick up and discharge at Camden, and along the approaches to the Turnpike, traffic moving to and from the south, that intention certainly could have been more clearly stated. On the other hand, in light of the prior existing operating authority and routes of Greyhound, it is clear that Baltimore and

Washington can reasonably be considered as "beyond Philadelphia, Pa.," and there is nothing in the application which indicates that service to those cities from Camden must be *through* Philadelphia, as plaintiff maintains. Thus the Commission held that there had been no amendment of the application. This holding is a reasonable interpretation of the Commission's own Rule 1.241(a), and there the matter ends. The fact that there may be other reasonable interpretations does not authorize this court to reject the reasonable interpretation adopted by the Commission. "[E]ven as to matters not requiring expertise a court may [not] displace the [Commission's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" Universal Camera Corp. v. National Labor Relations Bd., 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951). See Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 318–319, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958), and Gray v. Powell, 314 U.S. 402, 411, 62 S.Ct. 326, 86 L.Ed. 301 (1941).

## II.

■ As to the sufficiency of the evidence, it is hornbook that orders of the Commission should not be set aside, modified or disturbed by a court on review if they lie within the scope of the Commission's statutory authority and are based on adequate findings which are supported by substantial evidence upon the record as a whole, even though the court itself might have reached a different conclusion on the facts presented. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535–536, 66 S.Ct.

687, 90 L.Ed. 821 (1946). "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Miss. Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 694, 78 L.Ed. 1260 (1934).

■ The Commission's findings here are within the scope of its statutory authority[3] and are fully supported by substantial evidence. Camden County is a burgeoning suburban area. Its population increased 30 per cent from 1950 to 1960. Many witnesses from Camden testified to the inconvenience and the delay occasioned by changing to a Greyhound bus in Philadelphia on trips beyond that city. The evidence also shows that express picked up in and destined for Camden was likewise delayed in transshipment. After weighing this public interest against the relatively small amount of business Safeway Trails may lose[4] as a result of Greyhound's new service, the Commission found that this additional Greyhound service was required by the present and future public convenience and necessity. We are in no position to gainsay that statement. It is supported by substantial evidence and by adequate findings.

Since the Commission is "one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect," Universal Camera Corp. v. National Labor Relations Bd., *supra,* 340 U.S. at 488, 71 S.Ct. at 465, we must affirm the Commission's action.

Judgment for the defendants.

---

3. 49 Stat. 551, 49 U.S.C. § 307(a).

4. The hearing examiner found that Safeway Trails maintains three principal terminals between Philadelphia and the New Jersey Turnpike. The authority granted would not affect 85% of the business done at the first terminal, presently selling $30,000 worth of tickets a month, 99% of the business done at the second terminal, presently selling $8,000 worth of tickets a month, and 65% of the business done at the third terminal, presently selling about $800 worth of tickets a month.