Gabrielli, J.
(dissenting). With respect, I must dissent.
The majority first embraces a rather strained interpretation of the statutory definition of first-party no-fault benefits and then proceeds to conclude that the contrary interpretation, which was adopted by the Superintendent of Insurance, is not entitled to the usual deference because it "runs counter to the clear wording of [the] statutory provisions”. Since I am far from convinced that the language of the statute unambiguously supports the majority’s reading of it, I would vote to uphold the interpretation of the superintendent, who is, after all, charged with the responsibility of administering the complex provisions of the Insurance Law (Ostrer v Schenck, 41 NY2d 782, 786).
Indeed, a plain reading of the statutory provisions suggests that the superintendent’s interpretation, which is embodied in Insurance Department regulations (11 NYCRR 65.6 [n] [2] [xi]), is the correct one. Under subdivision 1 of section 672 of the Insurance Law, the insurer is obligated to pay an injured claimant "first party benefits” if certain statutorily defined conditions are met. First-party benefits consist of the injured claimant’s "basic economic loss” (see Insurance Law, § 671, subd 2), which, in turn, includes "loss of earnings from work which the injured person would have performed had he not been injured * * * up to one thousand dollars per month” (Insurance Law, § 671, subd 1, par [b]; emphasis supplied). In order to compute the correct figure for monthly "first party benefits” under the statute, however, it is necessary to reduce the amount attributable to "lost earnings” by 20%. This deduction, as noted by the majority, was included in the statutory scheme as a means of making the "lost earnings” component of first-party benefits, which are not subject to income tax, roughly equivalent to the after-tax income that the claimant would have enjoyed had he not been injured (Report of the Joint Legis Committee on Ins Rates, Regulation and Recodification of the Insurance Law, NY Legis Doc, 1973, No. 18, p 10).
In describing the manner in which the deduction is to be calculated, the Legislature clearly stated that the claimant’s "basic economic loss” must be reduced by "twenty percent of lost earnings pursuant to paragraph (b) of subdivision one of this section [§ 671]” (Insurance Law, § 671, subd 2, par [a]; emphasis supplied). I find the reference to section 671 (subd 1, par [b]) particularly significant because it suggests that the *461 Legislature intended that the term "lost earnings” be construed as a statutory term of art whose meaning is to be ascertained by reference to that subdivision. In other words, it was the Legislature’s intention to incorporate the entire statutory definition of "lost earnings” into section 671 (subd 2, par [a]) and then to apply the 20% reduction to the resulting figure. Since the statutory definition of "lost earnings” is circumscribed by a $1,000 per month maximum, it would seem that the figure against which the 20% reduction is to be applied can never exceed $1,000 per month. Accordingly, as the Superintendent of Insurance has concluded, the amount of first-party benefits that are attributable to "lost earnings” as a component of "basic economic loss” could never exceed $800 per month or $1,000 per month less 20%.
Having found the superintendent’s interpretation of the statute to be an eminently reasonable one, I would carry the inquiry no further. The Legislature has vested in the superintendent the responsibility of overseeing the highly complex, interrelated provisions known collectively as the No-Fault Automobile Insurance Law (Insurance Law, art 18), and, hence, under existing legal principles, the superintendent’s reading of the no-fault provisions is entitled to be accorded great weight (Ostrer v Schenck, 41 NY2d 782, 786, supra; see, also, Breen v Cunard Lines S. S. Co., 33 NY2d 508, 511; cf. Matter of Howard v Wyman, 28 NY2d 434, 438). Moreover, the fact that the Legislature has not found it necessary to correct the superintendent’s long-standing interpretation of section 671 (subd 2, par [a]) lends further support to the contention that this interpretation does not conflict with legislative intent. The Legislature is presumed to have been aware of the superintendent’s interpretation, which was promulgated in the form of an Insurance Department regulation as early as 1974. Surely, if the Legislature had disapproved of the superintendent’s interpretation of the statute, it would have acted to clarify the provision in 1977, when it undertook a major revision of the State’s No-Fault Automobile Insurance Law (L 1977, ch 892). I find this especially persuasive.
In an apparent recognition of the fact that the superintendent’s construction of the statute is at least as reasonable as its own, the majority has found it necessary to announce a new rule for reviewing an administrative agency’s interpretation of its governing statutes. Heretofore, it has been the unquestioned rule that the role of a reviewing court is limited to
*462 determining whether an agency regulation "is so lacking in reason for its promulgation that it is essentially arbitrary” (Matter of Marburg v Cole, 286 NY 202, 212). As we have previously observed, " '[t]he judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body’ ” (Ostrer v Schenck, supra, at p 786, quoting Mississippi Val. Barge Co. v United States, 292 US 282, 286-287; see Matter of Dumbleton v Reed, 40 NY2d 586, 590 [Jones, J., dissenting]; Matter of Howard v Wyman, 28 NY2d 434, 438, supra). Yet, despite the well-established practice of this court to refrain from substituting its judgment for that of the administrative agency charged with enforcing a statute, the majority has blandly asserted without further analysis that "there is little basis to rely on any special competence or expertise of the administrative agency”. With this I cannot agree. Our prior decisions in this area have been premised upon our conviction that the various administrative agencies, which are part of the executive branch of government, are entitled to have a significant role in the interpretation of legislative enactments. This is particularly so where, as here, the Legislature has delegated to the administrative agency the task of implementing complex and highly technical rules whose purpose is not always readily discernible to those who are unfamiliar with their interrelationships and practical application. Where the Legislature has entrusted a department head with the responsibility of carrying out its legislative design, we have always adhered to a policy of judicial restraint and have resisted the temptation to override the department head’s judgment in cases involving questions of statutory interpretation. Indeed, we have intervened only when the department head’s view is obviously irrational or is clearly contrary to the plain language of the enactment in question. This policy of deference, in my view, represents a proper balancing of the respective functions of the judicial and the executive branches of government. I regret that the majority has chosen to upset this balance by drastically altering a well-settled principle of law.
One further point remains to be discussed in this connection. The majority has implied that the superintendent’s reading of section 671 (subd 2, par [a]) should be ignored because it contradicts the clear import of the statutory language. I must confess that I am unable to find any such contradiction. Presumably, the majority’s view is based upon *463 its assumption that the Legislature would have written an $800 per month maximum into the definition of "lost earnings” if it intended the recovery attributable to "lost earnings” to be limited to that amount. An analysis of the entire legislative design, however, belies this assumption. In addition to being used in subdivision 2 of section 671 as a touchstone for measuring "first party benefits”, the term "basic economic loss”, which includes "lost earnings”, is also used in subdivision 1 of section 673 to define the threshold amount of damages which must be sustained in order for an injured claimant to be permitted to maintain a common-law tort action (see Montgomery v Daniels, 38 NY2d 41, 47). This alternate use of "basic economic loss” in the no-fault article, in my view, provides adequate explanation for the Legislature’s decision not to incorporate the $800 per month limitation on recoverable lost earnings directly into the statutory definition of that term. Indeed, contrary to the majority’s assertions, it seems perfectly reasonable to conclude that the Legislature intended the term "lost earnings” to be circumscribed by a $1,000 per month maximum for purposes of section 673 and, at the same time, intended that the $1,000 per month maximum be reduced by 20% for purposes of computing recoverable first-party benefits attributable to lost earnings.
In summary, I would stress that my disagreement with the majority stems not so much from our differing views concerning the proper interpretation of the statute as from the majority’s apparent refusal to acknowledge that the statute is reasonably susceptible of more than one interpretation. In order to overcome the principle that the views of an administrative agency are entitled to great deference in matters of statutory interpretation, the majority has had to drastically curtail the application of that well-settled principle and, in the process, has overridden the superintendent’s highly sensible reading of the statute. Yet, as the foregoing discussion illustrates, the interpretation proffered by the Superintendent of Insurance is amply supported by both the language of the statute and the legislative design. Under such circumstances, our prior case law would seem to require that the court refrain from substituting its views for those of the administrative agency charged with implementing the statute (see Matter of Marburg v Cole, 286 NY 202, 212, supra).
For the foregoing reasons, I would affirm the order of the *464 Appellate Division and uphold the existing Insurance Department regulations.
Chief Judge Cooke and Judges Jones, Wachtler, Fuchs-berg and Meyer concur with Judge Jasen; Judge Gabrielli dissents and votes to affirm in a separate opinion.
Order reversed, with costs, and the case remitted to Supreme Court, Erie County, for further proceedings in accordance with the opinion herein.